**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SHORT RECORD
NO. 26-1027
FILED 01/08/2026

| | |
|---|---|
| MICHELLE KIDD and GOYCE H. RATES, individually and on behalf of all others similarly situated; SOUTHWEST ORGANIZING PROJECT and PALENQUE LSNA, individually, )))))) | |
| Plaintiffs, )) | Case No. 1:22-cv-07061 |
| vs. )) | Hon. Matthew F. Kennelly |
| MARIA PAPPAS, in her capacity as Treasurer of Cook County, Illinois, and Trustee of the Indemnity Fund; and COOK COUNTY, ILLINOIS, ))))) | |
| Defendants. )) | |

## <u>DEFENDANT MARIA PAPPAS' NOTICE OF APPEAL</u>

Defendant Maria Pappas, in her capacity as Treasurer of Cook County and Trustee of the Indemnity Fund ("Treasurer Pappas"), hereby gives notice of her appeal to the United States Court of Appeals for the Seventh Circuit from this Court's December 8, 2025 Memorandum Opinion and Order on the parties' motions for summary judgment (ECF No. 198), which denied Eleventh Amendment sovereign immunity to Treasurer Pappas. Denials of Eleventh Amendment sovereign immunity are appealable under the collateral order doctrine. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993). *See also McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1048 (7th Cir. 2013) ("district court decisions rejecting state claims of sovereign immunity under the Eleventh Amendment are immediately reviewable under 28 U.S.C. § 1291 as final decisions pursuant to the collateral order doctrine.").

Dated:  January 6, 2026

                  Respectfully submitted,

                  EILEEN O'NEILL BURKE
                  Cook County State's Attorney


                  By  /s/ Kenneth S. Ulrich
                      Special Assistant State's Attorney

Kenneth S. Ulrich
David E. Morrison
Rachel C. Steiner
Kerry D. Nelson
Kyle W. Walther
Special Assistant State's Attorneys
GOLDBERG KOHN LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois   60603
(312) 201-4000
kenneth.ulrich@goldbergkohn.com
david.morrison@goldbergkohn.com
rachel.steiner@goldbergkohn.com
kerry.nelson@goldbergkohn.com
kyle.walther@goldbergkohn.com

-and-

Megan Honingford
Anthony O'Brien
Prathima Yeddanapudi
Michael Gilmartin
Michael Clarke
Karisa Flores
Assistant State's Attorneys
COOK COUNTY STATE'S
  ATTORNEY'S OFFICE
500 Richard J. Daley Center
Chicago, Illinois  60602
(312) 603-3116
megan.honingford@cookcountysao.org

anthony.obrien@cookcountysao.org
prathima.yeddanapudi@cookcountysao.org
michael.gilmartin@cookcountysao.org
michael.clarke@cookcountysao.org
karisa.flores@cookcountysao.org

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on January 6, 2026, he caused a copy of

**DEFENDANT MARIA PAPPAS' NOTICE OF APPEAL** to be served via the Court's

ECF/electronic mailing system upon the following counsel of record:

> Brian D. Roche
> William S. Weltman
> REED SMITH LLP
> 10 South Wacker Drive
> 40th Floor
> Chicago, Illinois  60606
> broche@reedsmith.com
> wweltman@reedsmith.com
>
> Charles R. Watkins
> GUIN, STOKES & EVANS, LLC
> 805 Lake Street, #226
> Oak Park, Illinois  60301
> charlesw@gseattorneys.com
>
> David J. Guin (admitted *pro hac vice*)
> GUIN, STOKES & EVANS, LLC
> 300 Richard Arrington, Jr. Boulevard North, Suite 600
> Birmingham, Alabama  35203
> davidg@gseattorneys.com
>
> John M. Bouman
> Lawrence D. Wood
> Daniel J. Schneider
> LEGAL ACTION CHICAGO
> 120 South LaSalle Street, 9th Floor
> Chicago, Illinois  60603
> jbouman@legalactionchicago.org
> lwood@legalactionchicago.org
> dschneider@legalactionchicago.org

/s/ Kenneth S. Ulrich
Special Assistant State's Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHELLE KIDD and GOYCE H. RATES, individually and on behalf of all others similarly situated; SOUTHWEST ORGANIZING PROJECT and PALENQUE LSNA individually,** | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 22 C 7061** |
| **MARIA PAPPAS, in her capacity as Treasurer of Cook County, Illinois and Trustee of the Indemnity Fund, and COOK COUNTY, ILLINOIS,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case currently has four plaintiffs—Michelle Kidd, Goyce H. Rates, Southwest Organizing Project (SWOP), and Palenque LSNA (PLSNA)—who filed suit against Cook County and its treasurer, Maria Pappas. The plaintiffs claim that the defendants violated their constitutional rights through the operation of Cook County's property tax sales. Specifically, the plaintiffs claim that Cook County's tax sales violate the Fifth Amendment's prohibition against takings without just compensation, the Eighth Amendment's prohibition on excessive fines, and the due process guarantees of the Fourteenth Amendment. Ms. Kidd and Ms. Rates assert claims for damages on behalf of themselves and others similarly situated. SWOP and PLSNA assert claims solely on behalf of themselves and request declaratory and injunctive relief.

The defendants have moved for summary judgment on all of the plaintiffs' claims. The plaintiffs have cross-moved for summary judgment on their Fifth Amendment and Eighth Amendment claims.

## Background

### A. Cook County's property tax sales

The following facts are undisputed unless otherwise noted. Every year, Cook County conducts a property tax sale. The procedures Cook County follows are outlined by the Illinois Property Tax Code, 35 ILCS 200, *et seq*. Under the Property Tax Code, if a homeowner fails to pay property taxes in a timely fashion, the property is considered delinquent. The County treasurer creates a list of all delinquent properties on an annual basis. *Id.* 200/21-160. If taxes on a delinquent property continue to go unpaid, the County treasurer may apply for a judgment and order of sale for unpaid taxes on that property. *Id.* 200/21-150. The judgment grants the County a lien on the property "for the amount of taxes . . . , interest, penalties, and costs due thereon" and orders that the property, "or so much of each of them as shall be sufficient to satisfy the amount of taxes . . . due thereon, be sold as the law directs." *Id.* 200/21-180. Once a judgment and order of sale is rendered, the Property Tax Code states that the County "shall" "proceed to offer the property for sale pursuant to the judgment." *Id.* 200/21-190.

Cook County offers its liens on delinquent property at its annual tax sale, which is supervised and administered by the Cook County Treasurer. Tax buyers bid against each other on a lien via the penalty percentage they propose to collect on any later payments made by the property owners, with the buyer who bids the lowest winning the bid. *Id.* 200/21-215. In exchange for the lien and the right to collect unpaid taxes from

the property owner plus the penalty percentage, tax buyers pay Cook County the outstanding balance of unpaid taxes on the property at issue.

The Illinois Constitution provides property owners with a "right of redemption," allowing property owners to reacquire ownership lost via the tax sale system.  *See* Ill. Const. art. IX, § 8.  Generally, property owners have thirty months from the time of the tax sale to redeem their property by repaying the tax buyer.  35 ILCS 200/21-350.  But if the property owner does not repay the tax buyer within the allotted time, the tax buyer may petition a court for ownership of the property.  *Id.* 200/22-30.  Upon granting the tax buyer's petition, the court orders the county clerk to issue and certify a tax deed transferring ownership of the property to the tax buyer.  *Id.* 200/22-40.

The Property Tax Code further requires counties to maintain a fund to indemnify eligible property owners for losses or damages incurred due to the tax sale.  35 ILCS 200/21-295.  To fund Cook County's Indemnity Fund, the Property Tax Code requires every tax buyer to pay "a nonrefundable fee of $80 for each [property] purchased plus an additional sum equal to 5% of the taxes, interest, and penalties paid" to purchase the property, as well as $80 for each subsequent year the tax buyer pays property taxes on the property.  *Id.*  A property owner seeking indemnity must "petition the Court which ordered the tax deed to issue" and "ask that judgment be entered against the County Treasurer, as trustee, in the amount of the indemnity sought."  *Id.* 200/21-305.  It is undisputed that Cook County's Indemnity Fund is insufficiently funded, creating "a backlog of Indemnity Fund awards about six or seven years in arrears."  Pls.' Resp. to Defs.' Stmt. of Facts ¶ 20.

3

**B.    The individual plaintiffs**

Michelle Kidd purchased her home in Maywood, Illinois in 2011.  She fell behind on her property taxes around 2015.  Cook County Treasurer Maria Pappas obtained a judgment and order of sale against her property that year.  On April 4, 2017, Cook County sold the tax lien on Ms. Kidd's property to High 5 Group, LLC for the amount of unpaid taxes, interest, and costs—$2,340.44.  Ms. Kidd was unable to pay her outstanding tax debt before the redemption period expired on October 10, 2019.  On November 2, 2021, High 5 Group obtained a tax deed for Ms. Kidd's home.  High 5 Group further obtained an order for possession of the property on January 23, 2022.  Rather than evict Ms. Kidd, High 5 Group allowed her and her family to remain in the property as long as she paid rent.  She did this for a few months before moving her family into a smaller rental unit in May 2022.

Goyce H. Rates inherited her home in Evanston, Illinois from her mother in 2014.  Ms. Rates did not pay property taxes for the two parcels of land on which the home sits.  Treasurer Pappas obtained a judgment and order of sale against both parcels.  On May 3, 2019, Cook County sold the tax liens on the respective parcels to separate tax buyers:  Newline Holdings, LLC and Corona Investments.  Collectively, the liens were purchased for the total unpaid taxes, interest, and costs relating to the two parcels—$9,025.45.  Ms. Rates was unable to redeem her property, and tax deeds for both parcels were issued to the tax buyers by June 2023.  Both buyers obtained eviction orders.  Ms. Rates and her family were evicted from the property on November 22, 2023.

At the time of the issuance of the tax deeds that transferred these properties to

4

tax buyers, Cook County's latest tax assessments indicated that Ms. Kidd's and Ms.

Rates's homes had fair market values of $166,220 and $389,060 respectively.  The

defendants dispute the reliability of these assessments as indicators of fair market

value.  Neither Ms. Kidd nor Ms. Rates have petitioned for lost home equity from Cook

County's Indemnity Fund.

## C.    The organizational plaintiffs

Southwest Organizing Project is a nonprofit organization based in Chicago.  Its

"broad mission is to bring together community stakeholders" to "allow for collective

action on issues critical to the community."  Defs.' Resp. to Pls.' Stmt. of Facts ¶ 53.  As

part of this mission, SWOP focuses on "[i]mproving access to housing, placing and

keeping community members in their homes, building their home equity, and reducing

vacant properties."  *Id.* ¶ 55.  In 2021, SWOP "spent approximately $35,000 (or one

percent of its annual budget) on work addressing issues connected to property tax

sales."  *Id.* ¶ 61.  It has continued to spend a similar amount in subsequent years.  *Id.*

This spending supports SWOP's efforts to inform communities about Cook County's tax

sale procedures, including by knocking on the doors of residents whose properties have

been identified as subject to a tax sale and alerting the residents of the scheduled sale.

*Id.* ¶ 74.  SWOP also provides "workshops related to property taxes, advertises its

property tax-related services, holds press conferences, hosts community meetings, and

engages in other non-lobbying education and advocacy."  *Id.* ¶ 80.

Palenque LSNA is another nonprofit organization based in Chicago.  Hoping to

"keep[] people in their homes," PLSNA serves community members by conducting

outreach regarding Cook County's tax sale procedures.  *Id.* ¶ 84.  As part of this

process, PLSNA monitors news regarding the Cook County's tax sales and meets with "relevant government officials, including [Treasurer] Pappas on one occasion." *Id.* ¶ 91. It has also conducted workshops on property tax issues in coordination with a Cook County Commissioner. *Id.* ¶ 92. And like SWOP, PLSNA attempts to contact residents whose properties are subject to a tax sale and "provide them with resources—or referrals to other resources—to help them avoid losing their home." *Id.* ¶¶ 97, 104.

### D.    This litigation

Ms. Kidd, Ms. Rates, Michael Bell, Dolly Janis, SWOP, and PLSNA filed the present suit against Treasurer Pappas in her official capacity, Cook County Clerk Karen A. Yarbrough in her official capacity, and Cook County. Their complaint alleges that the defendants violated the Fair Housing Act, the Illinois Civil Rights Act, and the United States Constitution through their operation of Cook County's property tax sale system.

On April 19, 2024, the Court dismissed the Fair Housing Act and Illinois Civil Rights Act claims against all defendants, dismissed all claims by Michael Bell, and dismissed all claims against County Clerk Yarbrough. *See generally Bell v. Pappas*, No. 22 C 7061, 2024 WL 1702691 (N.D. Ill. Apr. 19, 2024) (Kennelly, J.). The Court later granted Dolly Janis's motion to voluntarily dismiss her claims. The case thus now has four plaintiffs—Ms. Kidd, Ms. Rates, SWOP, and PLSNA—who allege that Cook County's tax sale system violates the Fifth Amendment's prohibition on taking property without just compensation, the Eighth Amendment's prohibition on excessive fines, and the Fourteenth Amendment's due process protections. These claims stem from the defendants' alleged failure to pay homeowners just compensation for their property upon transferring the property to tax buyers.

Ms. Kidd and Ms. Rates assert claims for damages, on behalf of themselves and those similarly situated. SWOP and PLSNA, on the other hand, bring their claims solely on their own behalf, and they seek declaratory and injunctive relief. On July 7, 2025, the Court granted Ms. Kidd's and Ms. Rates's motion for class certification. *See generally Kidd v. Pappas*, No. 22 C 7061, 2025 WL 1865983 (N.D. Ill. July 7, 2025) (Kennelly, J.).

Discovery is complete. The defendants have moved for summary judgment on all of the plaintiffs' claims. In response, the plaintiffs have cross-moved for summary judgment only on their Fifth Amendment and Eighth Amendment claims.

## Discussion

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). On cross-motions for summary judgment, the Court draws inferences "in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (cleaned up). The Court may

not "make credibility determinations" or "weigh the evidence."  *Payne v. Pauley*,

337 F.3d 767, 770 (7th Cir. 2003).  Still, to avoid summary judgment, the nonmoving

party must identify "specific facts showing that there is a genuine issue for trial" that go

beyond a "mere scintilla of evidence."  *Johnson v. Advoc. Health & Hosps. Corp.*,

892 F.3d 887, 894, 896 (7th Cir. 2018).

## A.     Standing

The defendants do not challenge the plaintiffs' standing.  But because standing

implicates a district court's subject matter jurisdiction, the Court has "an independent

obligation to assure that standing exists" at each stage of review.  *Prairie Rivers*

*Network v. Dynergy Midwest Generation, LLC*, 2 F.4th 1002, 1010 (7th Cir. 2021)

(quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)).

"Article III of the Constitution limits the federal judicial power to certain 'cases'

and 'controversies.'"  *Silha v. ACT, Inc.*, 807 F.3d 169, 172–73 (7th Cir. 2015) (quoting

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)).  A case or controversy is

present when a plaintiff establishes the "irreducible constitutional minimum" of standing.

*Id.* (quoting *Lujan*, 504 U.S. at 559–60).  Standing has three elements:  a plaintiff must

demonstrate that it has (1) "suffered a concrete and particularized injury that is either

actual or imminent," (2) "that the injury is fairly traceable to the defendant," and (3) "that

it is likely that a favorable decision will redress that injury."  *Massachusetts v. EPA*,

549 U.S. 497, 517 (2007).

"As the party invoking federal jurisdiction, a plaintiff bears the burden of

establishing the elements of Article III standing."  *Silha*, 807 F.3d at 173.  At the

summary judgment stage, "the plaintiff must demonstrate standing by setting forth by

affidavit or other evidence specific facts that, taken as true, support each element of standing." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561) (cleaned up).

The Court has no doubt that Ms. Kidd and Ms. Rates have established standing. The loss of their homes without compensation is an actual injury that is fairly traceable to the defendants' tax sale of their properties that would be redressed by their requested monetary relief.

SWOP's and PLSNA's standing is more debatable. Organizations have standing "to sue on their own behalf for injuries they have sustained." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)). Still, "organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* at 393–94.

The plaintiffs, citing the Supreme Court's decision in *Havens* and Seventh Circuit cases relying on it, argue that organizations establish a sufficient injury for standing when "they have been forced to take on work they otherwise would not do in order to address a defendant's ongoing violation." Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 35–36 (citing *Havens*, 455 U.S. at 379 and *Access Living of Metro Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 609 (7th Cir. 2020)). In *Havens*, a housing counseling organization, HOME, sued an apartment complex and one of its employees for violating the Fair Housing Act. *Havens*, 455 U.S. at 366–68. These defendants had engaged in racial steering by falsely telling prospective black residents that there were no apartments available. *Id.* HOME argued that it had standing to sue based on this violation as the practice of racial steering "frustrated the organization's counseling and

9

referral services, with a consequent drain on resources." *Id.* at 369.

The Court concluded that HOME had adequately alleged standing. *Id.* at 379. It explained its reasoning as follows:

> If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests . . . .

*Id.*

The Supreme Court, however, recently revisited its organizational standing jurisprudence in *FDA v. Alliance for Hippocratic Medicine*. In that case, four medical associations sued the FDA to enjoin its approval of an abortion drug. *Hippocratic Med.*, 602 U.S. at 376–77. Citing *Havens*, the associations argued that "standing exists when an organization diverts its resources in response to a defendant's actions." *Id.* at 395. The associations contended they had standing because they had "incur[ed] costs to oppose FDA's actions," including by "conduct[ing] their own studies" on the drug and "expend[ing] considerable time, energy, and resources . . . engaging in public advocacy and public education." *Id.* at 394 (cleaned up).

The Court disagreed. It noted that this interpretation of *Havens* "would mean that all the organizations in America would have standing to challenge almost every . . . policy that they dislike, provided they spend a single dollar opposing those policies." *Id.* at 395. The Court then distinguished *Havens*, emphasizing that "[c]ritically, HOME not only was an issue-advocacy organization, but also operated a housing counseling service." *Id.* Because HOME counseled prospective residents on housing, the

10

defendants' racial steering practices "directly affected and interfered with HOME's core business activities."  *Id.*  Finally, the Court cautioned against further extensions of *Havens'*s holding:  "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context."  *Id.* at 396.

The Seventh Circuit has not yet considered what effect *Hippocratic Medicine* has on *Havens* and its precedents.  But at least one court in this district has.  *See Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, No. 18 C 839, 2025 WL 975967 (N.D. Ill. Mar. 31, 2025) (Shah, J.).  After analyzing both *Havens* and *Hippocratic Medicine*, Judge Manish Shah concluded that *Havens*—and the Seventh Circuit precedent it spawned— remained valid:

> I do not read *Hippocratic Medicine* as upending the landscape of standing. *Havens* tells us what type of organizational injury is legally cognizable, and *Hippocratic Medicine* tells us what's not.  The Court in *Havens* noted that mere setbacks to an organization's "abstract social interests" are insufficient to demonstrate a concrete harm.  *Havens*, 455 U.S. at 379. *Hippocratic Medicine* further underscores that principle.  An organization's "general legal, moral, ideological, and policy concerns do not suffice on their own to confer Article III standing to sue in federal court."  *Hippocratic Med.*, 602 U.S. at 386.

*Nat'l Fair Hous. All.*, 2025 WL 975967, at *6.

The Court agrees that *Havens* and its Seventh Circuit progeny remain good law. Both before and after *Hippocratic Medicine*, a mere "setback" to an organization's "abstract social interests" cannot be used to establish standing.  *Hippocratic Med.*, 602 U.S. at 394 (quoting *Havens*, 455 U.S. at 379).  Rather, an organization must demonstrate that a defendant's actions "directly affected and interfered with" its "core business activities."  *Id.* at 395.  Only then can a "consequent drain on an organization's resources" constitute an injury in fact.  *Havens*, 455 U.S. at 379; *see also Common*

*Cause Ind. v. Lawson*, 937 F.3d 944, 955 (7th Cir. 2019) (emphasizing that an organization cannot establish "standing based solely on the baseline work they are already doing," but must instead show a defendant's actions created "additional or new burdens").

With these principles laid out, the Court concludes that SWOP and PLSNA have established standing.  As discussed above, it is a core business activity of both SWOP and PLSNA to advise residents in the communities they serve on how to maintain their homes.  Cook County's tax sales directly affect and interfere with their counseling services by exposing residents to possible home loss, requiring these organizations to put extra resources into informing these residents of the consequences of tax sales.  The consequent drain on resources is substantial—these organizations must sift through tax sale records and knock on the doors of residences identified in those records to fulfill their home-counseling purpose.  And much of this expense could be avoided if Cook County employed a tax sale system that did not result in the loss of home ownership without compensation.

To be clear, the Court does not find that every action SWOP and PLSNA take in response to Cook County's tax sales amounts to an injury in fact.  The organizations' meetings with Cook County officials, for example, are the type of "issue advocacy" that merely promotes these organizations' "abstract social interests."  *Hippocratic Med.*, 602 U.S. at 394 (quoting *Havens*, 455 U.S. at 379).  But like the home-advocacy organization in *Havens*, SWOP and PLSNA provide home counseling services as well.  As the Supreme Court indicated, this is a "critical" fact.  *Id.* at 395.  SWOP and PLSNA cannot give effective advice to their communities on how to maintain home ownership

12

without spending resources identifying and informing residents exposed to Cook County's tax sales.  This is an injury in fact that fits squarely within the context of *Havens*.

This injury is fairly traceable to Cook County's tax sale procedures that result in the transfer of property, and it would be redressed by declaratory and injunctive relief preventing the implementation of these procedures.  *See also Common Cause*, 937 F.3d at 956 (citing *Havens*, 455 U.S. at 379) (noting that a showing of a "consequent drain on resources" "is sufficient not only for causation but for the redressability element of standing" as well).

The Court therefore finds that all four plaintiffs have established standing.

## B.    Tax Injunction Act

Like standing, the defendants do not challenge this Court's jurisdiction based on the Tax Injunction Act directly.  But in arguing against injunctive relief, the defendants cite a Tax Injunction Act case to support their contention that any injunction would impermissibly throw Illinois's tax system "into disarray."  Defs.' Reply in Supp. of Mot. for Summ. J. at 39 (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 527–28 (1981)).  Because the Tax Injunction Act also implicates this Court's subject matter jurisdiction, the Court considers its prohibitions.  *See Cont'l Indem. Co. v. BII, Inc.*, 104 F.4th 630, 636 (7th Cir. 2024).

The Tax Injunction Act "deprives district courts of jurisdiction over suits seeking injunctive and declaratory relief from all state taxes, including municipal and local taxes."  *Ghelf v. Town of Wheatland*, 132 F.4th 456, 466 (7th Cir. 2025).  Specifically, the Act prohibits a federal court from considering a suit to "enjoin, suspend, or restrain

the assessment, levy or collection of any tax under [s]tate law." *Hibbs v. Winn*, 542 U.S. 88, 99–100 (2004) (quoting 28 U.S.C. § 1341).

The organizational plaintiffs' requested injunction does not fall within the Tax Injunction Act's prohibitions. The plaintiffs are clear that they "do not seek to enjoin the tax sale or any method of tax collection or to set aside tax deeds or judgments allowing the properties to be sold." Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 38. Rather, they "challenge only [the defendants'] failure, *after* all such tax obligations were satisfied, to either preserve [the plaintiffs'] remaining equity or ensure they would be compensated for it." Pls.' Reply Mem in Supp. of Mot. for Partial Summ. J. at 20. Injunctions related to post-collection actions are not barred by the Tax Injunction Act. *Freed v. Thomas*, 976 F.3d 729, 735 (6th Cir. 2020) (concluding the Tax Injunction Act did not prevent an injunction aimed at "*post-collection* actions, specifically Michigan's refusal to refund the excess proceeds of the sale of [the plaintiff]'s property and failure to reimburse [the plaintiff] for the surplus equity in his home"); *see also Tyler v. Hennepin County*, 505 F. Supp. 3d 879, 885–89 (D. Minn. 2020) (collecting cases), *rev'd on other grounds*, 598 U.S. 631 (2023).

The requested injunction would allow the defendants to continue to collect taxes owed through tax sales. It would only bar them from failing to compensate homeowners for the excess equity lost after the taxes are collected. Although the Court acknowledges that this might decrease the utility of tax sales, the fact that an injunction "merely inhibits" the collection of taxes does not make it impermissible under the Tax Injunction Act. *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 14 (2015) ("[A] suit cannot be understood to 'restrain' the 'assessment, levy or collection' of a state tax if it merely

14

inhibits those activities.").

The Court therefore concludes that it has jurisdiction despite the Tax Injunction Act's prohibitions.

## C.    Direct Fifth Amendment Takings claim

The plaintiffs, in a footnote, contend that they can bring their Fifth Amendment Takings claim "directly under the Constitution."  Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 9 n.2.  At the Court's direction, the parties submitted supplemental briefs on this point.  Dkt. nos. 190, 191.  The plaintiffs primarily base their argument on the Eleventh Circuit's decision in *Fulton v. Fulton County Board of Commissioners*, 148 F.4th 1224 (11th Cir. 2025), where the court held that the plaintiff could assert a direct Fifth Amendment Takings claim.  The defendants respond that the Supreme Court has never recognized a direct cause of action under the Fifth Amendment Takings Clause and that federal courts need not consider whether a direct cause of action exists under the Fifth Amendment when an alternative remedy under state or federal law exists.

The defendants are correct that the Court need not decide this point.  In *DeVillier v. Texas*, 601 U.S 285 (2024), the Supreme Court explained that it was not required to resolve whether the plaintiff had a cause of action arising directly under the Fifth Amendment Takings Clause because "Texas law provides a cause of action by which property owners may seek just compensation against the State." *Id.* at 292.  The Seventh Circuit has also held that a plaintiff cannot bring a Takings Clause claim directly under the Fifth Amendment when state law recognizes a cause of action for just compensation.  *Gerlach v. Rokita*, 95 F.4th 493, 499 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1044 (2025).  As in *DeVillier* and *Gerlach*, the Court need not reach the question

of whether the Fifth Amendment Takings Clause confers a direct cause of action because plaintiffs may seek compensation from the State under the Illinois Constitution. *See* Ill. Const. art. I, § 15 ("Private property shall not be taken or damaged for public use without just compensation as provided by law.  Such compensation shall be determined by a jury as provided by law.").

The plaintiffs' reliance on *Fulton* is unavailing.  In *Fulton*, the court first evaluated whether it needed to reach the question of whether the plaintiff could bring a takings claim directly under the Fifth Amendment.  *Fulton*, 148 F.4th at 1235.  The court recognized that it would not reach that question if the plaintiff could pursue an action under state law.  *Id.*  The court concluded that the plaintiff could not pursue a state law claim because the potential state law action would be time barred.  *Id.* at 1236.  Only against this backdrop did the court reach the question of whether the Takings Clause creates a direct cause of action.  *Id.* at 1238-39.  The court ultimately held that the plaintiff could assert a takings claim directly under the Fifth Amendment because no state-law action was available.  *Fulton*, 148 F.4th at 1234.

In this case, there is no statute of limitations or other bar to plaintiffs' ability to bring a state law takings claim.  Illinois law sets a five-year statute of limitations for all claims to recover damages for an injury done to, or conversion of, real property.  *See* 735 ILCS 5/13-205.  Treasurer Pappas issued tax deeds for Ms. Kidd's property in November 2021 and for Ms. Rates's property in June 2023.  SWOP and PLSNA seek declaratory and injunctive relief for alleged ongoing harms.  The claims in this case are therefore within the statute of limitations for a state-law takings claim.  Because the plaintiffs may assert a takings claim under state law, the Court does not reach the

question of whether the Takings Clause of the Fifth Amendment confers a direct cause of action.

### D.    Sovereign immunity and *Monell*

Two more preliminary issues must be addressed before the Court can reach the merits.  First, Treasurer Pappas argues that sovereign immunity protects her from liability, contending that she is acting as an arm of the state when implementing state-mandated tax sale policy.  Sovereign immunity, "secured to the states by the Eleventh Amendment," "is the privilege of the sovereign not to be sued."  *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520 (7th Cir. 2021) (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011)).  "All suits against a state or its agencies are barred by the Eleventh Amendment unless the state consents to suit in federal court or Congress uses its powers under the Fourteenth Amendment to abrogate the state's Eleventh Amendment immunity."  *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992).

In general, the protections of sovereign immunity are limited to states, their agencies, and their officials.  *See Lukaszczyk v. Cook County*, 47 F.4th 587, 603 (7th Cir. 2022) (citing *Pennhurst State Sch. & Hosp. v. Haldermann*, 465 U.S. 89, 106, 121 (1984)).  "[T]he Eleventh Amendment does not apply to counties and similar municipal corporations."  *Cassell v. Snyders*, 990 F.3d 539, 552 (7th Cir. 2021) (quoting *Pennhurst*, 465 U.S. at 117) (cleaned up).  Yet "county and local officials can still be treated as state officials for Eleventh Amendment purposes," and thus protected by sovereign immunity, "when carrying out non-discretionary duties subject to state policy control."  *Id.*  "Whether the Eleventh Amendment immunizes" Treasurer Pappas, then, "depends on the extent to which" the Treasurer was "exercising [her] own discretion as

[a] local official[] or instead following state policy orders." *Id.*

Second, Cook County contends that the plaintiffs have not established the requirements for municipal liability under 42 U.S.C. § 1983, as the tax sale system is a state-mandated policy. Section 1983 creates a private right of action for plaintiffs to bring suit against any "person" who violates their federal rights while acting under color of state law. 42 U.S.C. § 1983. "In order to bring constitutional claims against a municipality under Section 1983," the plaintiffs "must satisfy the requirements of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)." *Castro v. Dart*, 483 F. Supp. 3d 564, 573 (N.D. Ill. 2020) (citation omitted).

To sustain a claim under *Monell*, the plaintiffs must show that they "suffered a deprivation of a constitutionally protected interest" that was caused by "an official policy, custom or usage of the municipality." *Id.* (citation omitted). This policy must also be "the 'moving force' behind the federal-rights violation." *First Midwest Bank Guardian of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). "To satisfy th[is] standard," the plaintiffs must establish "a 'direct causal link' between the challenged municipal action and the violation of [their] constitutional rights." *Id.* (quoting *Brown*, 520 U.S. at 404).

The Seventh Circuit has held that a municipality does not establish a custom or policy sufficient for *Monell* liability when that policy is mandated by state or federal law. "When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury." *Bethesda Lutheran Homes & Servs., Inc.*

*v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998).

As is clear from the above discussion, both Treasurer Pappas's sovereign immunity defense and Cook County's *Monell* liability turn on whether Cook County's tax sale system is a state-mandated policy. If the State dictates all relevant facets of Cook County's challenged tax sale procedures, the County cannot be considered to have implemented a policy that caused the plaintiffs' injury as required by *Monell*, and the Treasurer enjoys sovereign immunity. If not, both can be held liable under *Monell*. *See Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014) (noting that a suit against "County Defendants in their official capacities under 42 U.S.C. § 1983" is "essentially another way of suing the county"). The Court thus considers each of the "policy choices" the plaintiffs allege the County and the Treasurer made when conducting their tax sales.

### 1.    Alternative *in personam* proceedings

First, the plaintiffs argue the defendants are not required to conduct a tax sale. The defendants disagree, noting that every relevant aspect of Cook County's tax sale system is mandated by state law. Illinois's Property Tax Code directs the County Treasurer to create a list of all delinquent properties within the County on an annual basis: "The collector *shall* transcribe into a record prepared for that purpose . . . the list of delinquent properties." 35 ILCS 200/21-160 (emphasis added). The Code then requires the Treasurer to apply for a judgment and an order of sale for unpaid taxes after a certain period of nonpayment: "In Cook County, all applications for judgment and order of sale for taxes . . . on delinquent properties *shall* be made . . . within 365 days of the second installment due date . . . ." *Id.* 200/21-150 (emphasis added). Then the Code requires a tax sale to follow: "If judgment is rendered against any property for

any tax . . . the county collector *shall*, after publishing a notice for sale . . . , proceed to offer the property for sale pursuant to the judgment." *Id.* 200/21-190 (emphasis added).

Despite this sea of "shall"s, the plaintiffs contend that a property tax sale is only one option available to the County for tax collection. They argue that Illinois's Property Tax Code contains an alternative option whereby the County can bring an *in personam* action against the delinquent property owner for the unpaid taxes due. The relevant section reads as follows:

> The county board may, at any time after final judgment and order of sale against delinquent property . . . , institute a civil action in the name of the People of the State of Illinois in the circuit court for the whole amount due for taxes and special assessments on the delinquent or forfeited property.

35 ILCS 200/21-440.

On its face, this argument has a glaring problem. The just-quoted statute says that the County may bring an *in personam* action only "after final judgment *and order of sale* against delinquent property." *Id.* (emphasis added). As the defendants argue, the requirement of an "order of sale" indicates that this *in personam* option is a backstop usable only after the County first attempts a tax sale of the property. *See also People ex rel. Larson v. Rosewell*, 88 Ill. App. 3d 272, 274 410 N.E.2d 404, 406 (1980) (describing this *in personam* action as a "'back stop' for property which was not purchased at the annual tax sale").

In response, the plaintiffs emphasize that section 21-440 only requires an "order" of sale before an *in personam* action may commence, not that the sale actually occurs. They contend that the legislature simply enabled counties to obtain a judgment and order of sale so they have the option to sell the property but left the ultimate choice of whether to sell the property to the County. The plaintiffs support this argument by

20

noting that the latest amendment to this section added the ability to bring an *in personam* action against any "delinquent" property, not just property "forfeited" to the state as a result of a failed tax sale.[1]

But there is another problem with the plaintiffs' contention. As discussed above, the Code appears to *require* a tax sale once a court renders a judgment and order of sale: "If judgment is rendered against any property for any tax . . . the county collector *shall* . . . proceed to offer the property for sale pursuant to the judgment." *Id.* 200/21-190 (emphasis added).

Again, the plaintiffs provide an answer. They contend that "shall" in this context should be interpreted as discretionary. This interpretation, according to the plaintiffs, is the only way to harmonize the Property Tax Code's allowance of an *in personam* action with the seemingly mandatory tax sale provisions.

When interpreting a state statute, a federal court follows the "rules of statutory construction" of that state—in this case, Illinois. *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019). "Illinois's primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1089 (7th Cir. 2016) (quoting *People v. Donoho*, 204 Ill. 2d 159, 171, 788 N.E.2d 707, 715 (2003)) (cleaned up).

"The best evidence of legislative intent is the statutory language." *In re*

---

[1] "As used in this context, forfeiture is a term of art. Under the Property Tax Code, property which goes unsold at a tax sale for want of bidders 'shall be forfeited to the State of Illinois.' . . . For tax collection purposes, forfeiture means simply that other collection methods will be employed to collect the delinquent taxes." *Phoenix Bond & Indem. Co. v. Pappas*, 194 Ill. 2d 99, 103 n.2, 741 N.E.2d 248, 250 n.2 (2000) (citations omitted).

*Hernandez*, 918 F.3d at 569 (quoting *Donoho*, 204 Ill. 2d at 171, 788 N.E.2d at 715).

"Statutory provisions should not be read in isolation but 'as a whole; all relevant parts of

the statute must be considered when courts attempt to divine the legislative intent

underlying the statute.'" *Id.* (quoting *People v. NL Indus.*, 152 Ill. 2d 82, 100,

604 N.E.2d 249, 356 (1992)).  Illinois courts further "presume that the legislature enacts

statutes in light of the constitution and intends to enact constitutional legislation."

*Oswald v. Hamer*, 2018 IL 122203, ¶ 32, 115 N.E.3d 181, 191.  The plaintiffs argue that,

after construing the tax sale and *in personam* procedures together and applying the

presumption of constitutional intent, the legislature must have intended tax sales to be

discretionary—not mandatory.  *Cf. id.* (construing the term "shall" in a statute "to be

permissive and not mandatory" after considering the legislative intent).

　　The plaintiffs, however, disregard the Property Tax Code's other tax sale

provisions that indicate that the legislature intended tax sales to be mandatory.  First,

the Code states that at least fifteen days before applying for a judgment and order of

sale, "the county collector shall mail . . . a notice of the forthcoming application" to the

owner of the property in question.  35 ILCS 200/21-135.  This section emphasizes that

"[t]he notice shall include the intended dates of application for judgment and sale and

*commencement of the sale*." *Id.* (emphasis added).  Then, at least ten days before

applying for a judgment and order of sale, the County "shall" publish an advertisement

for the sale.  *Id.* 200/21-115.  The County is also required, "within the next five business

days after the date of application," to "give notice of a date . . . on which *all* the

properties for the sale of which an order is made *will be exposed to public sale*." *Id.*

(emphasis added).  And once a judgment and order of sale is rendered, the Code states

"the sale shall begin on the date within 5 business days specified in the notice as provided in Section 21-115." *Id.* 200/21-150.

In other words, Illinois's Property Tax Code requires the County to: (a) notify the owner of the delinquent property of an impending sale, (b) post an advertisement promoting the sale, (c) set an intended date for the sale within five business days after applying for judgment and order of sale, and (d) have the sale occur within five business days of the previously proposed date once a judgment and order of sale is rendered.[2] It makes no sense that the Illinois legislature would set out these intricate procedures— including specific requirements for when a date for the tax sale must be set—just to allow the County to bypass the entire process by conducting an *in personam* action. *Cf. In re Hernandez*, 918 F.3d at 569 (quoting *Sylvester v. Indus. Comm'n*, 197 Ill. 2d 225, 232, 756 N.E.2d 822, 827 (2001)) (noting that Illinois courts "must construe the statute

---

[2] This is how the Court interprets these provisions. The defendants, on the other hand, interpret section 21-150's command that "the sale shall begin on the date within 5 business days specified in the notice as provided in Section 21-115" as requiring the County to conduct a tax sale within five days of the judgment order itself, not within five days of a previously chosen date. *See* 35 ILCS 200/21-150. Yet as the provision suggests, a sale only needs to begin within five business days of the date specified in section 21-115, which in turn states: "The collector shall also give notice of a date within the next 5 business days after the date of application on which all the properties for the sale of which an order is made will be exposed to public sale . . . ." *Id.* 200/21-115. As discussed above, the Court interprets this section as imposing a five-day time limit on how long a County has to choose a date after applying for a judgment and order of sale. An alternative plausible interpretation of section 21-115, however, is that it does not limit how long the County has to choose a date, but instead requires the date of sale to be within five days of application. But this interpretation conflicts with the time limit section 21-150 sets for a court to issue a judgment and order of sale: "Within 30 days after the day specified for the application for judgment the court shall hear and determine the matter." *Id.* 200/21-150. It is unclear how a court could have thirty days after application to issue a judgment and order of sale if the sale must be scheduled and occur within only five days of the application. Either way, no matter what interpretation of these time limits is correct, these specific limits make clear the Illinois legislature intended for a tax sale to occur.

so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous, avoiding an interpretation that would render any portion of the statute meaningless or void, and presume that the [Illinois legislature] did not intend absurdity, inconvenience, or injustice").

Nor does the possible unconstitutionality of this tax sale process call for a different interpretation. Although courts presume that the Illinois legislature intended to enact constitutional legislation, the Court cannot "correct" legislation when it is clear the legislature intended a certain result. *See People v. Pullen*, 192 Ill. 2d 36, 42, 733 N.E.2d 1235, 1238 (2000) (noting a court cannot, "under the guise of statutory interpretation, . . . 'correct' an apparent legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language"). All the above provisions that outline the tax sale process, which consistently use the ordinarily mandatory "shall," indicate that the Illinois legislature intended the County to conduct a tax sale before attempting any *in personam* action. The Court cannot rewrite the statute to say otherwise.

### 2. Power to add tax sale rules

The plaintiffs next argue that even if the Property Tax Code mandates a tax sale, the County Treasurer has the authority to implement policies related to the execution of the sale that would preserve any lost equity of the homeowner. The Illinois Supreme Court described the circumstances in which a treasurer may implement rules not expressly set forth in the Property Tax Code in *Phoenix Bond & Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 741 N.E.2d 248 (2000). As discussed above, the Property Tax Code requires tax buyers to bid on properties by "offering to pay the amount due on

each property for the least penalty percentage."  35 ILCS 200/21-215.  In *Phoenix Bond*,

tax buyers were colluding when buying properties by submitting simultaneous bids at

the maximum penalty rate allowed by statute.  *Phoenix Bond*, 194 Ill. 2d at 102–03,

741 N.E.2d at 250.  This caused 95% of the properties for sale to be sold at the

maximum penalty percentage.  *Id.*  To ensure that properties were sold through a

competitive bidding process, the Treasurer implemented a new policy under which it

automatically considered property to be forfeited back to the state if "multiple

simultaneous bids [were] received at the same percentage and if no bid of a lower

percentage [was] received."  *Id.* at 103, 741 N.E.2d at 250.  Tax buyers sued, arguing

that the Treasurer lacked any express authority to implement such a rule.  *Id.* at 104,

741 N.E.2d at 250.

The Illinois Supreme Court concluded that the Treasurer was "not confined to

those actions specifically detailed in the Property Tax Code."  *Id.* at 105, 741 N.E.2d at

251.  The court noted that "[w]hen the [Illinois legislature] conferred on county collectors

the power to conduct tax sales, it also conferred, by implication, the authority to do all

that is reasonably necessary to execute that power."  *Id.*  The Treasurer thus had the

"discretion to accomplish in detail what [was] legislatively authorized in general terms."

*Id.* (quoting *Lake Cnty. Bd. of Rev. v. Prop. Tax Appeal Bd.*, 119 Ill. 2d 419, 428,

519 N.E.2d 459, 463 (1988)).

To determine whether the Illinois legislature authorized the Treasurer to

implement the "specific policy adopted," the Court reviewed the relevant Property Tax

Code sections.  *Id.*  It first emphasized that the Code required the property to be sold

only to the tax buyer offering "the least penalty percentage."  *Id.*  Because a tie in the

penalty percentage meant there is no buyer who bid the "least," the property could not "be sold" as there was no one "proper bidder to sell it to." *Id.* at 106, 741 N.E.2d at 251. "Where property is 'not sold for want of bidders,'" the Court noted, "the Property Tax Code provides that it is normally deemed forfeited and subject to other means of disposition." *Id.* (quoting 35 ILCS 200/21-225). The Court thus concluded that the Treasurer's bidding policy "merely follow[ed] that procedure," making the policy permissible under the Property Tax Code. *Id.* Finally, the Court found that the Treasurer's policy supported the Property Tax Code's purpose of "foster[ing] competition in bidding" "in order to enable owners to exercise their right of redemption, as guaranteed by [the Illinois] constitution (see Ill. Const. 1970, art. IX, § 8), at the lowest possible cost." *Id.* at 252.

What is clear from both *Phoenix Bond*'s holding and analysis is that the Treasurer has "the authority to do all that is reasonably necessary to execute" the procedures and purposes of Illinois's Property Tax Code. *Id.* at 105, 741 N.E.2d at 251. "[T]he word 'necessary' is a word of great flexibility and may mean 'absolutely necessary,' 'indispensable,' or, less restrictively, 'expedient' or 'reasonably convenient.'" *Lake Cnty. Bd. of Rev.*, 119 Ill. 2d at 427, 519 N.E.2d at 463. Administrative officers have "wide latitude" when "fulfilling their duties." *Id.*

The plaintiffs contend that Treasurer Pappas had the power to adopt several policies that would prevent property owners from losing excess equity via tax sales, including by: (1) requiring "as a condition of the Treasurer accepting a tax buyer's bid on a property" that "the tax buyer would . . . commit to paying to the homeowner the value of the property in excess of the tax debt at the time the [tax] deed issued";

26

(2) offering "for sale only so much of each property (as a fractional share) as was sufficient to satisfy the amount of debt"; and (3) providing "prompt and fair just compensation" on behalf of the County.  Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 16–17.

The Court concludes that the Treasurer has the authority to implement the first and third proposed policies—accepting a bid only if the buyer agrees to pay the excess equity on the purchased property and providing property owners "prompt and fair just compensation."  The Illinois Supreme Court has noted that "there is no uncertainty about who will be allowed to buy property offered at a tax sale.  The property may only be purchased by the bidder who offers to pay the amount due for the least penalty percentage." *Phoenix Bond*, 194 Ill. 2d at 105, 741 N.E.2d at 251.  But the Court also noted that "statutes should not be construed in a way that would defeat the statute's purpose or yield an absurd or unjust result." *Id.*  Although the Code dictates that the property sold in a tax sale must be purchased by the person offering to pay the least penalty percentage, the Illinois and United States constitutions prohibit the taking of private property without just compensation. *See* Ill. Const. 1970, art. IX, § 8; U.S. Const. amend. V; 35 ILCS 200/21-215.  By requiring a tax buyer to pay the amount due and bid the lowest penalty percentage, plus the excess equity at the time a tax deed issues, the Treasurer would ensure that that the statute does not yield an unjust result—taking the property without just compensation.

The addition of such a condition would not conflict with the Property Tax Code. The judgment and order of sale the County procures against a delinquent taxpayer's property does not grant the County authority over the property itself.  It instead imposes

a tax lien on that property and orders the sale of that tax lien. *See id.* 200/21-190

(noting that only when a "judgment is rendered against any property *for any tax*" may

the County "proceed to offer the property for sale pursuant to the judgment") (emphasis

added). The "property" sold at a tax sale is thus not the residence itself, but the

County's tax lien on that property, as that is all the County has the authority to sell. *See*

*Wheeler Fin., Inc. v. Law Bull. Publ'g Co.*, 2018 IL App (1st) 171495, ¶ 4, 129 N.E.3d

53, 57 ("Every year, the Cook County Treasurer's Office . . . conducts an auction of tax

liens on properties with delinquent tax bills (tax sale)."); *In re LaMont*, 740 F.3d 397, 400

(7th Cir. 2014) ("When the property is sold at an annual sale, the tax purchaser pays all

taxes due on the property, the county loses its lien, and the tax purchaser receives a

'Certificate of Purchase.'"); Jeffrey S. Blumenthal & David R. Gray, Jr., *Tax Bills and*

*Payments; Tax Sales and Redemptions; Miscellaneous Collections*, *in* Real Estate

Taxation: Assessments, Rate Challenges, and Tax Sale Matters § 6.24 (Ill. Inst. for

Continuing Legal Educ. 2020) ("It should be remembered that the judgment orders the

collector to sell the lien of the real estate taxes and not the property itself."). After a tax

buyer obtains a tax lien, the buyer can obtain a tax deed to the entire property if the

delinquent taxpayer fails to redeem the property. 35 ILCS 200/22-30. A policy requiring

a tax buyer to agree to pay the excess equity at the time a tax deed issues would not

impact the purchase of the tax lien itself. This type of condition instead would ensure

that the original property owner receives just compensation as required by law if the tax

lien buyer later obtains the deed to the property.

    In addition, the Treasurer may implement plaintiffs' third proposed policy—

compensating the property owners directly—as a condition reasonably necessary to

execute a tax sale.  As discussed, the United States and Illinois constitutions require that a private property owner receive just compensation when her property is taken. Any condition ensuring that the property owner receives this just compensation is thus reasonably necessary to execute a tax sale that complies with the Illinois Property Tax Code and the United States and Illinois Constitutions.

The Treasurer is therefore authorized to adopt either of these policies—the Treasurer requiring a tax buyer to agree to pay the excess equity on the purchased property, or the County providing property owners "prompt and fair just compensation"—because providing just compensation to the property owner is "reasonably necessary to execute" a tax sale under the Illinois Property Tax Code that would not cause an unjust result.  *See Phoenix Bond*, 194 Ill. 2d at 105, 741 N.E.2d at 251.

On the other hand, the plaintiffs' argument that the Treasurer may offer "for sale only so much of each property (as a fractional share) as was sufficient to satisfy the amount of debt" misunderstands what the County is actually able to sell at a tax sale. Section 21-180, which describes the judgment and order of sale against a delinquent property, states that a County is ordered to sell "the properties, *or so much of each of them* as shall be sufficient to satisfy the amount of taxes . . . due thereon."  35 ILCS 200/21-180 (emphasis added).  The plaintiffs argue that this provision authorizes the Treasurer to sell only the amount of property required to satisfy the tax debt and thereby avoid any loss of excess equity.  As discussed, however, the Treasurer sells the tax lien on the property in question, not the property itself.  The Treasurer therefore cannot sell only a portion of the property.

29

In sum, the Treasurer is authorized to adopt policies that would provide the property owner just compensation—either from the purchaser of the tax lien or from the County itself—because such policies would be reasonably necessary to execute a tax sale in accordance with law, but the Treasurer is not authorized to sell only a portion of the property.

### 3. Home rule

The plaintiffs also contend that Cook County has the independent power to "appropriate funds to compensate homeowners deprived of surplus equity." Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 17–19. Cook County has certain independent, "home rule" powers under the Illinois Constitution. Ill. Const. 1970, art. VII, § 6(a)); *Allen v. Cook County*, 65 Ill. 2d 281, 285–88, 357 N.E.2d 458, 460–62 (1976). These powers are "deliberately broad," allowing Cook County to "exercise any power and perform any function pertaining to its government and affairs." *Blanchard v. Berrios*, 2016 IL 120315, ¶ 26, 72 N.E.3d 309, 318 (quoting Ill. Const. 1970, art VII, § 6(a)).

The defendants argue that Cook County's home rule powers are limited in the taxing sphere. Although they concede the County has broad power to implement rules "which pertain to its government and affairs," the defendants contend that "the collection of property taxes is not one of them." Defs.' Reply in Supp. of Mot for Summ. J. at 15 (quoting *Bridgman v. Korzen*, 54 Ill. 2d 74, 78, 295 N.E.2d 9, 11 (1972)). The Illinois Supreme Court has held that assessing and collecting taxes are not within Cook County's home rule powers because "the county acts both for itself and the other taxing bodies authorized to levy taxes on property within the county," meaning these functions do "not pertain to its government and affairs to any greater extent than to the

government and affairs of the other taxing bodies for whose benefit it acts." *Bridgman*,
54 Ill. 2d at 78, 295 N.E.2d at 11; *see also Chi. Bar Ass'n v. Cook County*, 102 Ill. 2d
438, 441, 467 N.E.2d 580, 581 (1984) (applying *Bridgman*'s reasoning to tax
assessments).

The defendants, clinging to the plaintiffs' reference to "appropriating funds,"
argue that their hands are tied due to their inability to levy or assess taxes.  This is an
overly narrow reading of the plaintiffs' argument.  As made clear in their reply, the
plaintiffs are asking the County to "[p]ay[] just compensation" when the "challenged
takings occur," which is "after properties are assessed and after the taxes have been
collected."  Pls.' Reply Mem. in Supp. of Mot. for Partial Summ. J. at 10.  The plaintiffs
are not arguing that the County must levy and assess taxes to do so, or that levying or
assessing taxes is the only way to ensure just compensation for excess equity lost.  The
defendants cannot construe the plaintiffs' argument in the narrowest possible way to
avoid any responsibility.

Next, the defendants contend that even if Cook County has the home rule power
to compensate property owners for lost equity, the County's failure to use that power is
not a sufficient policy under *Monell*.  They contend that the County's failure to pay for
homeowners' lost equity amounts to a policy of "inaction."  The Seventh Circuit has
"cautioned" that "the path to *Monell* liability based on inaction is steeper because, unlike
in a case of affirmative municipal action, a failure to do something could be inadvertent
and the connection between inaction and a resulting injury is more tenuous."  *Orozco v.
Dart*, 64 F.4th 806, 824 (7th Cir. 2023) (citation omitted).  A failure to act "amounts to
municipal action for *Monell* purposes *only if* the municipality has notice that its program

will cause constitutional violations." *Id.* at 824–25 (cleaned up). "Demonstrating that notice is essential to an ultimate finding [of liability] and requires a 'known or obvious' risk that constitutional violations will occur." *Id.* at 825.

The plaintiffs "can demonstrate the requisite notice" in "two ways." *Id.* First, the plaintiffs can show "a pattern of past constitutional violations such that the County was put on notice of the constitutional harm." *Id.* Second, the plaintiffs can show "that the risk of a constitutional violation . . . was so high as to be obvious." *Id.* The defendants contend that the plaintiffs' evidence is insufficient to permit a finding in their favor on either of these alternatives. *See* Defs.' Mem. in Supp. of Mot. for Summ. J. at 13.

A reasonable fact finder could find that if the tax sales did result in unconstitutional takings and fines, the risks of that in conducting tax sales was obvious to the County. Cook County arguably had every piece of information needed to know that its failure to compensate property owners created a high risk of constitutional violations: tax sales often led to the issuance of tax deeds without compensation to homeowners; a transferred property could be worth more than the property owner's outstanding tax debt;[3] and the Indemnity Fund, which is supposed to compensate homeowners for lost equity, was severely underfunded and backlogged.

The defendants may argue that they could not have known of this risk because the Supreme Court's decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023)—which

---

[3] In fact, considering that Cook County was required by Illinois law to assess properties at their "fair market value," it likely could have determined *which* specific homeowners were at risk of losing excess equity by comparing a property's assessment to that homeowner's outstanding tax debt. *See* Cook Cnty. Assessor's Off., *Find Out More Information About Your Property* (last accessed Nov. 30, 2025), https://www.cookcountyassessor.com/assessor-property-details.

formally concluded that a county's retention of excess equity violated the Fifth

Amendment's Takings Clause—only came out in 2023. Yet the Supreme Court was not

imposing any new obligation onto counties in *Tyler*. Instead, the Court was interpreting

the preexisting obligations counties have to pay just compensation for taken property

under the Fifth Amendment's Takings Clause—a clause that has imposed restrictions

on local governments since 1897. *See Chi., B. & Q. R. Co. v. City of Chicago*, 166 U.S.

226, 241 (1897) (incorporating the Fifth Amendment's Taking Clause onto the states

and local governments through the Fourteenth Amendment). And the Court in *Tyler*

held—unanimously—that counties' "use [of] the toehold of the tax debt to confiscate

more property than was due" was a "*classic* taking." *Tyler*, 598 U.S. at 639 (emphasis

added).

     A reasonable fact finder could find that the defendants knew that the Fifth

Amendment prohibited the taking of property without just compensation and that the tax

sales often led to properties being transferred despite property owners not being

compensated for the excess equity in their properties. Further, a reasonable fact finder

could find that by conducting those tax sales without providing a sufficient means to

reacquire lost excess equity, the defendants ignored the obvious risk that property

owners who had their property transferred without just compensation would have their

constitutional rights violated.

     That said, the plaintiffs are not entitled to summary judgment in their favor

regarding *Monell* liability. The inference they seek is certainly supported by the

evidence, but for the plaintiffs to get summary judgment, they would have to establish

that no reasonable jury could find lack of sufficient notice on the defendants' part. The

record before the Court (at least as presented in the summary judgment materials) is relatively sparse regarding the frequency of Takings Clause violations resulting from the Cook County tax sale.  An argument can be made that the risk of violations was patently obvious given the arguably chronic insufficiency of the Indemnity Fund, but in the Court's view this point is not sufficiently established on the present record to entitle the plaintiffs to summary judgment in their favor regarding *Monell* liability.

In a last attempt to avoid being held responsible for failing to compensate property owners, the defendants emphasize that Cook County is the only county in Illinois with home rule powers.  They argue that if the Court were to find Cook County's failure to use its home rule powers is a *Monell* policy, that would mean Illinois's Property Tax Code "can only be constitutional in Cook County."  Defs.' Reply in Supp. of Mot. for Summ. J. at 16.  In essence, the defendants are arguing that because other counties lacking home rule powers also violate the Constitution when implementing Illinois's Property Tax Code, Cook County should be allowed to do so as well despite having the home rule power to avoid constitutional violations.  That is absurd on its face.  The County's claimed failure to use its home rule powers to provide just compensation qualifies as a policy sufficient for *Monell* liability.

Finally, the defendants argue that any alleged policy to not use home rule was not the "moving force" of the plaintiffs' alleged constitutional violations.  They argue that the State of Illinois is the true culprit, as it both mandates the tax sales and sets the Indemnity Fund procedures.

The Court disagrees.  What actually results in property owners losing their property—in this case, being deprived of their equity—is not the state-imposed

34

processes for conducting a tax sale, but the refusal of the seller—the County—to
compensate owners for their lost equity after the sale is completed.  That is in no way
mandated by state law.  The County has an independent obligation to comply with the
Constitution's mandate of fair compensation for the taking of property.  Nothing in the
Property Tax Code prohibits or even hinders County from doing so.  The fact that no
Illinois statute affirmatively requires the County to comply with the Constitution's
mandate does not immunize the County for its own actions or inactions, nor does it
make the Treasurer an arm of the state when she fails to provide just compensation.

The Court therefore concludes that the County, and Treasurer Pappas in her
official capacity as Cook County's Treasurer, may be held liable under *Monell* for the
plaintiffs' alleged constitutional violations.  In addition, the Treasurer is not entitled to
sovereign immunity on the theory that she acts under compulsion of state law in
committing the challenged wrongdoing.[4]  The defendants are not entitled to summary

---

[4]      The Court notes that a finding that sovereign immunity applies to Treasurer
Pappas's actions when implementing tax sales would not preclude liability completely.
"[S]overeign immunity is not absolute."  *Valcq*, 16 F.4th at 520.  One notable exception
to sovereign immunity is "[t]he doctrine of *Ex parte Young*," which allows plaintiffs to sue
state officials in their official capacity for "prospective relief against an ongoing violation
of federal law."  *Id.* at 521.  For an official to be held liable under *Ex parte Young*, the
official need only "'some connection with the enforcement' of an allegedly
unconstitutional state statute for the purpose of enjoining that enforcement."  *Doe v.
Holcomb*, 883 F.3d 971, 976 (7th Cir. 2018) (quoting *Ex parte Young*, 209 U.S. 123, 157
(1908)).  Because county officials are treated as state officials when carrying out non-
discretionary state duties, the *Ex parte Young* exception applies to county officials if
they have a sufficient connection to the enforcement of the state law being challenged.
*See, e.g.*, *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) ("Actions under *Ex
parte Young* can be brought against both state and county officials, so it is
unnecessary . . . to resolve the parties' dispute over whether the Sheriff acts on behalf
of King County or the State of Washington . . . ."); *McNeil v. Cmty. Prob. Servs., LLC*,
945 F.3d 991, 994–95 (6th Cir. 2019) (noting that "it makes no difference whether [a
county sheriff] acts for the State or the county" because "[i]f he acts for the State, *Ex
parte Young* permits [an] injunction action against him").  This would be so for Treasurer

judgment on these bases.  But the plaintiffs are not entitled to summary judgment in their favor on the *Monell* point either, for the reasons discussed above.

## C.    Merits

Even though neither the plaintiffs nor the defendants are entitled to summary judgment in their favor on *Monell* liability, the Court proceeds to address the remaining arguments for summary judgment regarding liability issues.  *See* Fed. R. Civ. P. 56(g).

### 1.    Takings Clause

The plaintiffs argue that Cook County's tax sales violate the Fifth Amendment's prohibition on takings without just compensation.  To "assert[] a Takings Clause claim," the plaintiffs must establish:  "(1) that the government entity 'took' [the plaintiffs'] property, either through a physical taking or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal) was taken, the government has not paid just compensation."  *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021).

The primary basis for the plaintiffs' Takings Clause claim is the Supreme Court's decision in *Tyler v. Hennepin County*, so the Court begins there.  In *Tyler*, the plaintiff owed roughly $15,000 in unpaid property taxes, interest, and penalties.  *Tyler*, 598 U.S at 635.  Hennepin County, utilizing Minnesota's tax forfeiture laws, seized the plaintiff's property.  *Id.*  The county then sold the property for $40,000, extinguishing the $15,000

---

Pappas even were she entitled to sovereign immunity regarding a suit for damages. The Court notes that the organizational plaintiffs, SWOP and PLSNA, ask solely for prospective relief in the form of a declaratory judgment that Cook County's implementation of the tax sales violate the Constitution and an injunction preventing further violations.  The *Ex parte Young* doctrine would therefore allow these claims to move forward against the Treasurer even if she prevailed on her sovereign immunity defense.

debt.  *Id.*  The county retained the $25,000 surplus for its own use.  *Id.*

The plaintiff sued Hennepin County and its officials, arguing that "the County had unconstitutionally retained the excess value of her home above her tax debt" in violation of the Fifth Amendment's Takings Clause.  *Id.* at 635–36.  The Supreme Court unanimously concluded that the plaintiff had plausibly alleged a Takings Clause claim.  *Id.* at 647–48.  The Court recognized that the county "had the power to sell [the plaintiff]'s home to recover the unpaid property taxes."  *Id.* at 639.  "But it could not use the toehold of the tax debt to confiscate more property than was due."  *Id.*  In doing so, the county "effected a classic taking in which the government directly appropriates property for its own use."  *Id.* (cleaned up).

In reaching this conclusion, the Court distinguished its prior decision in *Nelson v. City of New York*, 352 U.S. 103 (1956).  In *Nelson*, the Court had found New York City did not violate the Takings Clause by foreclosing on properties for unpaid water bills.  *Id.* at 105–06, 109–10.  The Supreme Court in *Tyler* emphasized that *Nelson* involved an ordinance that "permitted the owner to recover surplus" by "fili[ng] a timely answer in the foreclosure proceeding, asserting his property had a value substantially exceeding the tax due."  *Tyler*, 598 U.S. at 644 (quoting *Nelson*, 352 U.S. at 110).  The Court concluded that the foreclosure in *Nelson* did not amount to a taking because "the New York City ordinance did not 'absolutely preclude an owner from obtaining the surplus proceeds of a judicial sale,' but instead simply defined the process through which the owner could claim the surplus."  *Id.* (quoting *Nelson*, 352 U.S. at 110).  Neither Hennepin County nor Minnesota, by contrast, provided any "opportunity for the taxpayer to recover the excess value," so the county could not rely on *Nelson* to defend against

37

the plaintiff's Taking Clause claim. *Id.*

The defendants argue that Cook County's tax sales do not amount to a taking. They attempt to distinguish *Tyler* in two ways. First, the defendants emphasize that the County does not take title to any property nor receive any surplus equity. As discussed above, the County only obtains a tax lien on the property, which is then sold to a tax buyer for the amount of unpaid taxes due. Only if the delinquent property owner fails to redeem the property after Cook County's tax sale can the tax buyer obtain a deed to the property. According to the defendants, this means the tax buyer is the party responsible for the taking—not the County, Treasurer, or State.

But the fact that a tax buyer might *also* have violated the Takings Clause does not immunize the defendants' facilitation of the transfer of property without just compensation. "A permanent physical occupation authorized by state law is a taking without regard to whether the State, or instead a party authorized by the State, is the occupant." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432 n.9 (1982).

Several Supreme Court cases have indicated that the government is responsible for a Takings Clause violation when it authorizes the occupation of private property by third parties. *See, e.g.*, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 144–45, 162 (2021) (concluding that the plaintiff raised a plausible Takings Clause claim against California Agricultural Relations Board members in their official capacity when the Board promulgated a regulation that allowed third-party "labor organizations 'right to take access' to an agricultural employer's property"); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 827, 841–42 (1987) (concluding that the California Coastal Commission

was liable for a Takings Clause violation when it "condition[ed] its grant of permission to rebuild [the plaintiffs'] house on their transfer to the public of an easement across their beachfront property"); *Kaiser Aetna v. United States*, 444 U.S. 164, 165, 180 (1979) (concluding that the United States must "invok[e] its eminent domain power and pay[] just compensation" when attempting to open up a private marina to the public).

Treasurer Pappas, through conducting Cook County's tax sales in accordance with Illinois's Property Tax Code, authorized the taking of homeowners' property.  A tax buyer's purchase of Cook County's tax lien on a homeowner's property is a required first step in obtaining that property.  A prerequisite for obtaining any tax deed is that the property is "sold pursuant to judgment and order of sale" to a tax buyer.  35 ILCS 200/22-30.  And only that purchaser or an agent of that purchaser may petition for the issuance of a tax deed.  *Id.*  As the plaintiffs put it, when Cook County "sold tax liens on [the] [p]laintiffs' properties, [the] [d]efendants conferred on tax buyers the ability to obtain tax deeds to the properties."  Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 9.  Treasurer Pappas, in her official capacity, is responsible for this authorized taking. *See also Sharritt v. Henry*, No. 23 C 15838, 2024 WL 4524501, at *1, *11–12 (N.D. Ill. Oct. 18, 2024) (concluding that Illinois counties and their treasurers can be held liable for the property transfer resulting from tax sales as homeowners "ultimately render *the entire value* of their properties" to the government, which "in turn renders it" to the tax buyer).

Second, the defendants contend that Cook County's tax sales could not result in any taking, as homeowners may petition the Indemnity Fund for lost excess equity.  The defendants rely on the just-referenced Supreme Court decision *Nelson v. City of New*

*York* to argue that the availability of a process to acquire lost equity prevents any taking.

The Supreme Court in *Nelson*, however, did not hold that *any* statutory process to acquire excess equity prevented a taking. The ordinance in *Nelson* provided a straightforward process for property owners to receive excess equity. A property owner only had to "file[] a timely answer in a foreclosure proceeding, asserting [the] property had a value substantially exceeding the tax due." *Nelson*, 352 U.S. at 110. Upon providing such proof, "a separate sale" would take place "so that the owner might receive the surplus." *Id.*

The Indemnity Fund is a far cry from the process approved of in *Nelson*. To receive any award from the Indemnity Fund, petitioners must establish not just that they lost excess equity, but that they are "equitably entitled to compensation." 35 ILCS 200/21-305. When determining whether a petitioner is "equitably entitled," a court may look at factors beyond proof of lost equity, including "the condition and income of the Indemnity Fund." *Hedrick v. Bathon*, 319 Ill. App. 3d 599, 608, 747 N.E.2d 917, 925 (2001). Considering that the Indemnity Fund is chronically underfunded and currently has a six-to-seven-year backlog in awarding payments, establishing equitable entitlement to compensation appears to be difficult.

Moreover, most Indemnity Fund awards are capped by statute at $99,000. *See* 35 ILCS 200/21-305. If a petitioner seeks lost excess equity greater than $99,000, the petitioner must further "prove that the loss of his or her property was not attributable to his or her own fault or negligence." *Id.* Under this standard, a petitioner may be denied an Indemnity Fund award based on factors that are entirely unrelated to the value of the property. For example, one Illinois appellate court affirmed the denial of an Indemnity

Fund award because the petitioners were "very articulate, bright individuals who have served in the military, raised families, retired from other professions, and [were] responsible for the day-to-day affairs of the workings of [a] corporate church," all of which was said to indicate that their failure to pay property taxes was negligent. *Greater Pleasant Valley Church in Christ v. Pappas*, 2012 IL App (1st) 111853, ¶¶ 27–31, 975 N.E.2d 713, 721–23.

The defendants disagree that these conditions are impermissible, emphasizing that the ordinance "at issue in *Nelson* was not automatic, and required a showing that payment was 'proper.'" Defs.' Reply in Supp. of Mot. for Summ. J. at 27 (quoting *City of New York v. Chapman Docks Co.*, 149 N.Y.S.2d 679, 680 (App. Div. 1956)). Yet New York courts only required "the property of the answering owner" to have a "value substantially exceeding the amount of the tax liens" for it to be a "proper case." *Chapman Docks*, 149 N.Y.S.2d at 680. Although the phrase "substantially exceeding" could be construed as requiring more than just showing a loss of equity, it is not obvious that this condition was onerous. Neither *Nelson* nor *Tyler* dwell on this requirement. And language in *Nelson* seems to indicate that the Supreme Court did not view this "substantially exceeding" language as imposing any condition beyond showing surplus equity. *See Nelson*, 352 U.S. at 110 (noting it was proper for New York City to retain foreclosed property "in the absence of timely action . . . to recover[] *any* surplus") (emphasis added).

But this is all beside the point. Even if New York City's ordinance did impose a condition of showing a loss of "substantial" excess equity, this condition was at least linked to the lost equity sought. It is not akin to the several roadblocks the Indemnity

Fund places in front of petitioners. The ordinance approved of in *Nelson* did not have a statutory cap, did not require petitioners to show that they are "equitably entitled" to their lost equity, and did not further require a lack of fault or negligence. The Supreme Court's tacit approval of one condition on obtaining excess equity that was related to the lost equity sought cannot be interpreted as approving the Indemnity Fund's several unrelated constraints.

The defendants raise no further defenses against the plaintiffs' Takings Clause claim. The plaintiffs are therefore entitled to summary judgment in their favor on their contention that the defendants' procedures regarding tax sales violate the Fifth Amendment's Takings Clause.

### 2.    Excessive Fines Clause

Next, the plaintiffs argue that Cook County's tax sales violate the Eighth Amendment's prohibition on excessive fines. *See* U.S. Const. amend VIII. "The analysis under the Excessive Fines Clause proceeds in two steps." *Grashoff v. Adams*, 65 F.4th 910, 916 (7th Cir. 2023). First, a court must determine whether "the sanction is punitive or purely remedial." *Id.* Second, "[i]f the sanction is punitive," the court then determines "whether it is 'grossly disproportional to the gravity of the offense.'" *Id.* (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).

It is undisputed that Cook County's tax sales have a punitive purpose. Illinois courts acknowledge that "the primary purpose of the tax sales provisions of the Property Tax Code is to coerce tax delinquent property owners to pay their taxes." *Excalibur Energy Co. v. Rochman*, 2014 IL App (5th) 130524, ¶ 17, 22 N.E.3d 322, 326 (quoting *In re Application of the Cnty. Collector*, 295 Ill. App. 3d 703, 710, 692 N.E.2d 1211,

1216 (1998)).  Fines meant to coerce action do not "*solely* . . . serve a remedial

purpose."  *Austin v. United States*, 509 U.S. 602, 621 (1993) (citation omitted).  In fact,

coercing action is a paradigmatic goal of punishment.  *Cf. Timbs v. Indiana*, 586 U.S.

146, 153 (2019) (describing states' "use of fines to coerce involuntary labor" as an

example of excessive fines prohibited by the Eighth Amendment that the Fourteenth

Amendment was passed to address).

The defendants contend that their property tax sales nonetheless cannot be

considered a "fine" because "the County never takes possession of the property nor

realizes any surplus value."  Defs.' Mem. in Supp. of Mot. for Summ. J. at 23.  This is an

absurd contention.  If that were the law, any government could impose whatever

excessive fines it pleases—and reap the coercive benefits of those fines—simply by

passing on the proceeds to a third party.  As discussed above, it is the punitive purpose

of the government sanction, not what the government receives, that causes a fine to fall

under Eighth Amendment scrutiny.  *See, e.g.*, *Paroline v. United States*, 572 U.S. 434,

455 (2014) (noting that restitution may constitute a fine despite it being paid to private

victims because "it is imposed by the Government" and "serves punitive purposes");

*Tyler*, 598 U.S. at 650–51 (Gorsuch, J., concurring) ("Economic penalties imposed to

deter willful noncompliance with the law are fines by any other name.").

The sole case the defendants cite in support of their argument that a government

does not impose a "fine" unless it possesses or receives the surplus value of property is

the out-of-circuit case *Ramsey v. City of Newburgh*, No. 23 C 8599 (CS), 2024 WL

4444374 (S.D.N.Y. Oct. 8, 2024).  Yet *Ramsey* does not stand for this proposition.

Instead, the court in *Ramsey* concluded that the plaintiff's Eighth Amendment claim was

"not *ripe* because the City has not sold the property or retained any surplus equity."  *Id.*

(emphasis added).  This conclusion may have made sense in *Ramsey*, as the plaintiff

was still "occupy[ing] the property while fighting eviction," meaning there was still a

possibility that the plaintiff would retain her home and thus suffer no fine.  *See id.* at *3.

But there is no such possibility in this case.  Cook County's tax sales resulted in

the transfer of homes to tax buyers via tax deeds, and the defendants have pointed to

no process that could reverse these transfers.  These homeowners have irretrievably

lost their homes and the excess equity that comes with them.  By facilitating the tax

sales that resulted in the loss of this excess equity, the defendants have imposed a fine

on these homeowners that is subject to Eighth Amendment scrutiny.  *See also Grady v.*

*Wood County*, --- F. Supp. 3d ---, 2025 WL 1234111, at *9 (S.D. W. Va. Apr. 29, 2025)

(concluding that West Virginia's materially similar tax sale system imposed a "fine" and

that it was "irrelevant that [the defendant] did not receive the property title or equity," as

"the purpose of the [Excessive Fines] Clause is to limit the government's ability to

excessively punish a private party through financial means").[5]

---

[5] Language in older Supreme Court cases could be read as requiring the government to obtain payment for the Eighth Amendment's Excessive Fines Clause to apply.  In *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989), the Supreme Court determined that the Eighth Amendment does "not apply to awards of punitive damages in cases between private parties."  *Id.* at 260.  In making this determination, the Court noted that "the Excessive Fines Clause was intended to limit only those fines directly imposed by, *and payable to*, the government."  *Id.* at 268 (emphasis added).  The Court, however, appeared to roll back this statement in *Paroline v. United States* when it interpreted a federal restitution statute.  The Court recognized that it "ha[d] said that 'the Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government.'"  *Paroline*, 572 U.S. at 455–56 (quoting *Kelco Disposal*, 492 U.S. at 268).  But although "restitution . . . is paid to a victim," the Court emphasized "it is imposed by the Government," "implicates the prosecutorial powers of government," and "serves punitive purposes.  *Id.* at 456 (cleaned up).  That, according to the Court, "may be sufficient to bring it within the

The plaintiffs further contend that the loss of any excess equity as a result of Cook County's tax sales is excessive in all residential property cases. A court weighs four factors to determine whether a fine is excessive: "(1) the essence of the crime and its relation to other criminal activity; (2) whether the [offender] fit into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the [offender]'s conduct." *United States v. Malewicka*, 664 F.3d 1099, 1104 (7th Cir. 2011) (citing *Bajakajian*, 524 U.S. at 337–39).

The first factor considers the nature of the offense, including whether "the underlying violation of the law [was] significant." *Grashoff*, 65 F.4th at 918. The underlying offense in this case was the failure to pay property taxes. This is a non-criminal violation "unrelated to any other illegal activities." *See Bajakajian*, 524 U.S. at 337–38. Of course, "failing to pay property taxes . . . merits some sort of monetary penalty." *Sharritt*, 2024 WL 4524501, at *15. But "total forfeiture seems extremely harsh when overdue taxes" often "amount to only two or three percent of [a] property's value." *Balthazar v. Mari Ltd.*, 301 F. Supp. 103, 106 (N.D. Ill.) (three-judge panel), *aff'd without opinion*, 396 U.S. 114 (1969). The non-criminal nature of the offense indicates that the large fine of total forfeiture of property without compensation is unwarranted. *See Grady*, 2025 WL 123411, at *10.

---

purview of the Excessive Fines Clause." *Id.* (cleaned up). Considering both these case, this Court concludes that *Paroline* states the general rule as to when the Eighth Amendment Excessive Fines Clause applies and *Kelco Disposal* carves out an exception. A fine falls under the Eighth Amendment when it is imposed by the government for a punitive purpose (*Paroline),* but a civil suit between private parties does not have enough government involvement to be considered a government fine (*Kelco Disposal*).

The second factor "asks whether the sanctioned person fits within the class of persons for whom the statute was principally designed." *Grashoff*, 65 F.4th at 918 (cleaned up). This factor favors the defendants. It is undisputed that Illinois's Property Tax Code was designed to punish homeowners like the plaintiffs who failed to pay property taxes.

The third factor "considers the maximum fine and sentence that could have been imposed." *Grashoff*, 65 F.4th and 919. This factor recognizes that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Bajakajian*, 524 U.S. at 336. "[L]egislative judgments about maximum sentences and fines for comparable offenses" are thus "'relevant evidence' when assessing the gravity of the offense." *Grashoff*, 65 F.4th at 917 (quoting *Bajakajian*, 524 U.S. at 339 n.14).

Illinois's Property Tax Code, however, does not impose a maximum penalty through the tax sale process. Instead, the maximum fine "is indefinite and undefined: it depends entirely on the value of the properties [the homeowners] once owned and bears little relation to the amount of property taxes they failed to pay" to the County. *Sharritt*, 2024 WL 4524501, at *15.

Of course, a court is not forced to conclude that the imposition of a fine is non-excessive simply because the legislature imposes no maximum penalty—that would render the Eighth Amendment a dead letter. In this circumstance, a court may look toward other states' penalties to determine how legislatures view the gravity of the underlying offense. *See Grashoff*, 65 F.4th at 919–20 (considering the unemployed-benefits fraud punishments of several states to support its conclusion that Indiana's penalties were not excessive). Most governments do not allow for such unbounded loss

46

of excess equity.  The Supreme Court noted in *Tyler* that tax sale systems that result in any lost equity are the "minority rule": at least "[t]hirty-six [s]tates and the Federal Government require that the excess value be returned to the taxpayer."  *Tyler*, 598 U.S. at 642.  Although Illinois's decision to impose no maximum cap on excess equity lost is relevant, it cannot outweigh the majority view that homeowners should have their excess equity returned to them upon loss of their home.

Finally, the fourth factor "consider[s] the harm caused by" the sanctioned person's conduct.  *Grashoff*, 65 F.4th at 920.  Homeowners' failure to pay their property taxes undoubtedly causes harm to Cook County by depriving the County of funding.  Yet that harm is limited to the taxes owed and the costs of obtaining those taxes.  There is little justification for imposing any fine beyond the taxes, interest, and costs due, especially when homeowners already suffer the punishment of losing their rights to their residences.

Weighing these factors, the Court concludes that the loss of excess equity as a result of Cook County's tax sales is an excessive fine in all residential property cases.  As the Supreme Court emphasized in *Bajakajian*, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality:  The amount of forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."  *Bajakajian*, 524 U.S. at 334.  The amount of equity lost due to Cook County's tax sales "bears no articulable correlation to any injury suffered by the Government."  *Id.* at 340.  Homeowners who never bother to pay property taxes may suffer little equity loss if the home lacks value, while homeowners who dutifully pay taxes may lose immense equity if they fall on hard times.  The underlying non-criminal

47

offense of failing to pay property taxes does not justify such arbitrarily severe penalties.

The defendants do not attempt to justify this arbitrariness. Instead, the sole argument they make is that the Indemnity Fund prevents any fines from being excessive, as it "ensures that, for those who avail themselves of the procedures, they will be awarded any lost 'equity' they have in properties lost through the tax sale process." Defs.' Mem. in Supp. of Mot. for Summ. J. at 23. Yet as discussed above, an Indemnity Fund award is no guarantee. Petitioners must at least show they are "equitably entitled to compensation." 35 ILCS 200/21-305. And a court may consider "the condition and income of the Indemnity Fund"—which is undisputedly underfunded and backlogged—when determining whether a petitioner is equitably entitled to compensation. *See Hedrick*, 319 Ill. App. 3d at 608, 747 N.E.2d at 925. The defendants' proposed solution to their arbitrarily excessive fines, then, is an Indemnity Fund process that itself can arbitrarily deny a homeowner excess equity due to a lack of funding. The Indemnity Fund, at least in its current state, is no remedy for the excessive fines imposed on homeowners who lost equity through Cook County's tax sale process.

The plaintiffs are therefore entitled to summary judgment in their favor on their contention that the defendants' procedures regarding tax sales violate the Eighth Amendment Excessive Fines Clause.

### 3.    Due Process Clause

Finally, the plaintiffs argue that Cook County's tax sale process violates the Fourteenth Amendment's procedural due process protections. In their briefs, the plaintiffs clarify that their due process claim is "pleaded in the alternative to their Takings

48

and Excessive Fines claims" and is relevant only if the Court finds the Indemnity Fund prevented or remedied the alleged Fifth Amendment and Eighth Amendment violations. Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 33. Because the Court has concluded the Indemnity Fund does not prevent these violations, the plaintiffs' due process claim is moot. *But see also Balthazar*, 301 F. Supp. at 104–06 (finding Illinois's property tax sale procedures constitutional under the Due Process Clause because "delinquent landowners, including the plaintiffs, are adequately notified of their tax deficiencies and of a[] tax sale or foreclosure"), *aff'd without opinion*, 396 U.S. 114 (1969).

The Court therefore dismisses the plaintiffs' due process claim as moot.

E.    **Remedy**

The parties have not briefed how damages should be calculated for the individual plaintiffs and class members. One way or another, though, damages will have to be the subject of further proceedings. And though the parties have addressed the requirements for declaratory and injunctive relief, the Court is of the view that making a final determination on these points is inappropriate considering that *Monell* liability is still an open question. *See Los Angeles County v. Humphries*, 562 U.S. 29, 34 (2010) (*Monell* applies to claims for declaratory and injunctive relief as well as claims for damages).

**Conclusion**

For the reasons stated above, the Court denies the defendants' motion for summary judgment and partly grants and partly denies the plaintiffs' motion for summary judgment. The sovereign immunity defense is overruled; plaintiffs are entitled

49

to summary judgment on their contentions that the defendants' tax sale procedures

violate the Fifth and Eighth Amendments; but the issues of *Monell* liability and

appropriate relief remain for later determination.  The telephonic status hearing set for

December 11, 2025 is vacated.  The case is set for an in-person status hearing on

December 16, 2025 at 10:00 a.m.  The parties are directed to promptly meet and confer

and are to file by December 12, 2025 a joint status report with a proposal for whatever

further proceedings are needed to bring the case to a conclusion (or separate proposals

if they cannot agree).  They should come to the December 16 status hearing prepared

to set a prompt trial date on any points that remain for trial.

Date:  December 8, 2025

MATTHEW F. KENNELLY
United States District Judge

50

1/8/26, 11:01 AM Case: 1:22-cv-07061 Document: 306 Filed: 01/08/26 Page: 55 of 84 PageID #:5737
CM/ECF NextGen Live 1.8 (rev.1.8.5) - U.S. District Court, Northern Illinois

Case: 26-1027     Document: 1-1     Filed: 01/08/2026     Pages: 84

APPEAL,STAYED,VALDEZ

# United States District Court
## Northern District of Illinois - CM/ECF NextGen 1.8 (rev. 1.8.5) (Chicago)
## CIVIL DOCKET FOR CASE #: 1:22-cv-07061
## Internal Use Only

Bell et al v. Pappas et al
Assigned to: Honorable Matthew F. Kennelly
Cause: 42:1983 Civil Rights Act

Date Filed: 12/15/2022
Jury Demand: Both
Nature of Suit: 443 Civil Rights:
Accommodations
Jurisdiction: Federal Question

**Plaintiff**

**Michael Bell**
*individually and on behalf of themselves and
all others similarly situated*

represented by **Brian D. Roche**
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-1000
Fax: Active
Email: broche@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Robert Watkins**
Guin & Evans, LLC
805 Lake Street, #226
Oak Park, IL 60301
312-878-8391
Fax: 205-413-8716
Email: cwatkins@guinevans.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Joshua Schneider**
Legal Action Chicago
120 S. LaSalle St.
Suite 900
Chicago, IL 60603
312-423-5941
Email: dschneider@legalactionchicago.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Bouman**
Legal Action Chicago
120 South LaSalle Street
Suite 900
Chicago, IL 60603
(312) 961-3862
Fax: Active

Email: jbowman@legalactionchicago.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Seth Weltman**
Reed Smith LLP
10 S. Wacker Dr.
40th Floor
Chicago, IL 60606
(312) 207-1000
Fax: Active
Email: wweltman@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brigid Carmichael**
Massey & Gail
50 East Washington St.
Suite 400, c/o Massey & Gail LLP
60602
Chicago, IL 60622
312-379-0953
Fax: 312-379-0467
Email: bcarmichael@masseygail.com
*TERMINATED: 04/02/2024*

**David Jonathan Guin**
Guin, Stokes & Evans, LLC
300 Richard Arrington Jr. Blvd. North
Suite 600
Birmingham, AL 35203
(205) 503-4505
Fax: Pro Hac Vice
Email: Davidg@guinevans.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Davis Wood**
Legal Action Chicago
120 South La Salle Street
900
Chicago, IL 60603
(312) 347-8330
Fax: Active
Email: lwood@legalactionchicago.org
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Michelle Kidd**
*individually and on behalf of themselves and
all others similarly situated*

represented by **Brian D. Roche**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Robert Watkins**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Joshua Schneider**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Bouman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Seth Weltman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brigid Carmichael**
(See above for address)
*TERMINATED: 04/02/2024*

**David Jonathan Guin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Davis Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Southwest Organizing Project**    represented by    **Brian D. Roche**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Robert Watkins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Joshua Schneider**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Bouman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Seth Weltman**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brigid Carmichael**
(See above for address)
*TERMINATED: 04/02/2024*

**David Jonathan Guin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Davis Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Palenque Lsna**                    represented by    **Brian D. Roche**
*individually*                                        (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Charles Robert Watkins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Joshua Schneider**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Bouman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Seth Weltman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brigid Carmichael**
(See above for address)
*TERMINATED: 04/02/2024*

**David Jonathan Guin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence Davis Wood**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dolly Janis**                                represented by    **Dolly Janis**
*TERMINATED: 09/26/2024*                                        PRO SE

**Plaintiff**

**Goyce H Rates**                              represented by    **Brian D. Roche**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Maria Pappas**                               represented by    **David E. Morrison**
*in her capacity as Treasurer of Cook*                          Goldberg Kohn Ltd.
*County, Illinois, and Trustee of the*                          Mid-Continental Plaza
*Indemnity Fund*                                                55 East Monroe Street #3300
                                                               Chicago, IL 60603
                                                               (312)201-4000
                                                               Fax: Active
                                                               Email: david.morrison@goldbergkohn.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Kenneth Steven Ulrich**
                                                               Goldberg Kohn Ltd.
                                                               Mid-Continental Plaza
                                                               55 East Monroe Street #3300
                                                               Chicago, IL 60603
                                                               (312)201-4000
                                                               Fax: Active
                                                               Email: kenneth.ulrich@goldbergkohn.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Prathima Yeddanapudi**
                                                               Cook County State's Attorney's Office
                                                               50 W. Washington
                                                               Suite 500
                                                               Chicago, IL 60602
                                                               (312) 603-5463
                                                               Fax: Not a member
                                                               Email:
                                                               prathima.yeddanapudi@cookcountysao.org
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Anthony Michael O'Brien**
                                                               Cook County State's Attorney's Office
                                                               50 W Washington Street

Room 500
Chicago, IL 60602
(312) 603-7949
Fax: Not a member
Email: anthony.obrien@cookcountyil.gov
*ATTORNEY TO BE NOTICED*

**Benjamin Will Chertok**
Neal Gerber & Eisenberg LLP
225 W. Randolph St.
Suite 2800
Chicago, IL 60606
312-269-8000
Email: bchertok@nge.com
*ATTORNEY TO BE NOTICED*

**Kaitlin Mckenzie**
Reilly & Dooley, LLC
30 N. LaSalle St
Suite 2330
Chicago, IL 60602
845-238-9278
Email: Kmckenzie@rdretax.com
*TERMINATED: 07/11/2024*

**Kathleen Anne Murphy**
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
(312)603-5439
Fax: Not a member
Email:
kathleen.murphy@cookcountysao.org
*ATTORNEY TO BE NOTICED*

**Kerry Donovan Nelson**
Goldberg Kohn
55 East Monroe
Suite 3300
Chicago, IL 60603-5792
312 863 7135
Fax: Not a member
Email: kerry.nelson@goldbergkohn.com
*ATTORNEY TO BE NOTICED*

**Megan Marie Honingford**
Cook County State's Attorney's Office
50 W. Washington
5th Floor
Chicago, IL 60602
(312) 603-3630
Fax: Not a member
Email:
megan.honingford@cookcountysao.org

ATTORNEY TO BE NOTICED

**Michael J. Gilmartin**
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
312-603-3131
Email:
michael.gilmartin@cookcountysao.org
*ATTORNEY TO BE NOTICED*

**Rachel C. Steiner**
Goldberg Kohn Ltd.
55 East Monroe, Suite 3300
Chicago, IL 60603
3122014000
Fax: Not a member
Email: rachel.steiner@goldbergkohn.com
*ATTORNEY TO BE NOTICED*

**William Kyle Walther**
Goldberg Kohn Ltd.
55 E. Monroe
Suite 3300
Chicago, IL 60603
(312) 201-3949
Fax: Not a member
Email: kyle.walther@goldbergkohn.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cook County**                    represented by  **David E. Morrison**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth Steven Ulrich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Prathima Yeddanapudi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anthony Michael O'Brien**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Benjamin Will Chertok**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kaitlin Mckenzie**
(See above for address)
*TERMINATED: 07/11/2024*

**Kathleen Anne Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kerry Donovan Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Marie Honingford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel C. Steiner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Kyle Walther**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Karen A. Yarbrough**                          represented by   **David E. Morrison**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth Steven Ulrich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Prathima Yeddanapudi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Will Chertok**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kaitlin Mckenzie**
(See above for address)
*TERMINATED: 07/11/2024*

**Kathleen Anne Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kerry Donovan Nelson**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Megan Marie Honingford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel C. Steiner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Kyle Walther**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/15/2022 | 1 | COMPLAINT filed by Palenque Lsna, Michael Bell, Southwest Organizing Project, Michelle Kidd; Jury Demand. Filing fee $ 402, receipt number AILNDC-20142376. (Roche, Brian) (Entered: 12/15/2022) |
| 12/15/2022 | 2 | CIVIL Cover Sheet (Roche, Brian) (Entered: 12/15/2022) |
| 12/15/2022 | 3 | ATTORNEY Appearance for Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project by Brian D. Roche (Roche, Brian) (Entered: 12/15/2022) |
| 12/15/2022 | 4 | ATTORNEY Appearance for Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project by Lawrence Davis Wood (Wood, Lawrence) (Entered: 12/15/2022) |
| 12/15/2022 | 5 | ATTORNEY Appearance for Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project by John Mark Bouman (Bouman, John) (Entered: 12/15/2022) |
| 12/15/2022 | 6 | ATTORNEY Appearance for Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project by Charles Robert Watkins (Watkins, Charles) (Entered: 12/15/2022) |
| 12/15/2022 | 7 | ATTORNEY Appearance for Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project by Daniel Joshua Schneider (Schneider, Daniel) (Entered: 12/15/2022) |
| 12/15/2022 | | CASE ASSIGNED to the Honorable Matthew F. Kennelly. Designated as Magistrate Judge the Honorable Maria Valdez. Case assignment: Random assignment. (smb, ) (Entered: 12/15/2022) |
| 12/15/2022 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (smb, ) (Entered: 12/15/2022) |

| | | |
|---|---|---|
| 12/15/2022 | 8 | ATTORNEY Appearance for Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project by William Seth Weltman (Weltman, William) (Entered: 12/15/2022) |
| 12/15/2022 | 9 | NOTICE by Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project *Pursuant to Rule 5.1 of Constitutional Question* (Roche, Brian) (Entered: 12/15/2022) |
| 12/15/2022 | | SUMMONS Issued as to Defendants Cook County, Illinois, Maria Pappas (mbh, ) (Entered: 12/15/2022) |
| 12/29/2022 | 10 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/29/2022) |
| 01/05/2023 | 11 | ATTORNEY Appearance for Defendants Cook County, Illinois, Maria Pappas by Prathima Yeddanapudi (Yeddanapudi, Prathima) (Entered: 01/05/2023) |
| 01/05/2023 | 12 | MOTION by Defendant Maria Pappas for extension of time to file answer *or otherwise plead* (Yeddanapudi, Prathima) (Entered: 01/05/2023) |
| 01/06/2023 | 13 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendants' unopposed motion for extension of time 12 is granted; response to complaint is to be filed by 2/9/2023. (mk) (Entered: 01/06/2023) |
| 01/23/2023 | 14 | MINUTE entry before the Honorable Matthew F. Kennelly: By no later than 2/2/2023, the parties (or, if no defendant has yet appeared, the plaintiff(s)) are to file a joint status report that includes the following information: (1) the status of service of process upon each defendant; (2) a description of each party's claims and defenses; (3) details regarding any discussions concerning settlement, whether before or after the filing of the lawsuit; (4) a proposed discovery and pretrial schedule; and (5) any other matters that any party wishes to bring to the Court's attention. The case is set for a case management conference under Federal Rule of Civil Procedure 16 on 2/9/2023 at 8:55 a.m. The case management conference will be conducted by telephone, using the following call-in number: 888-684-8852, access code 746-1053. Plaintiff's counsel is directed to provide a copy of this order to any defendant that has not yet appeared by counsel via regular mail at the address at which the defendant has been or is to be served with process. (mk) (Entered: 01/23/2023) |
| 01/25/2023 | 15 | SUMMONS Returned Executed by Palenque Lsna, Michael Bell, Southwest Organizing Project, Michelle Kidd as to Cook County, Illinois on 12/29/2022, answer due 1/19/2023. (Roche, Brian) (Entered: 01/25/2023) |
| 01/25/2023 | 16 | SUMMONS Returned Executed by Palenque Lsna, Michael Bell, Southwest Organizing Project, Michelle Kidd as to Maria Pappas on 12/22/2022, answer due |

| 01/27/2023 | 17 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Southwest Organizing Project (Schneider, Daniel) (Entered: 01/27/2023) |
|---|---|---|
| 01/27/2023 | 18 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Palenque Lsna (Schneider, Daniel) (Entered: 01/27/2023) |
| 01/31/2023 | 19 | ATTORNEY Appearance for Defendants Cook County, Illinois, Maria Pappas by Megan Marie Honingford (Honingford, Megan) (Entered: 01/31/2023) |
| 02/02/2023 | 20 | STATUS Report *(Joint)* by Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project (Schneider, Daniel) (Entered: 02/02/2023) |
| 02/08/2023 | 21 | ATTORNEY Appearance for Defendants Cook County, Illinois, Maria Pappas by Anthony Michael O'Brien (O'Brien, Anthony) (Entered: 02/08/2023) |
| 02/08/2023 | 22 | MOTION by Defendants Cook County, Illinois, Maria Pappas to stay *proceedings (unopposed)* (Honingford, Megan) (Entered: 02/08/2023) |
| 02/09/2023 | 23 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 2/9/2023. The defendants' agreed motion to stay 22 is granted. The case is stayed pending a decision by the Supreme Court in Tyler v. Hennepin County. The parties are directed to file a joint status report by 7/5/2023, or within 7 days after the resolution of the Supreme Court. A telephonic status hearing is set for 7/12/2023 at 9:00 a.m. The following call-in number will be used for the hearing: 888-684-8852, access code 746-1053. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 02/09/2023) |
| 02/09/2023 | 🔒 | (Court only) ***Motions terminated: MOTION by Defendants Cook County, Illinois, Maria Pappas to stay *proceedings (unopposed)* 22 (mma, ) (Entered: 02/09/2023) |
| 02/17/2023 | 24 | ATTORNEY Appearance for Defendants Cook County, Illinois, Maria Pappas by Kaitlin Mckenzie (Mckenzie, Kaitlin) (Entered: 02/17/2023) |
| 06/01/2023 | 25 | STATUS Report *Regarding Stay (Joint)* by Cook County, Maria Pappas (Honingford, Megan) (Entered: 06/01/2023) |
| 06/02/2023 | 26 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report. Defendants' responses to the complaint are to be filed by 7/8/2023. Also by 7/8/2023, the parties are to file a joint status report that includes a proposed discovery and pretrial schedule. (mk) (Entered: 06/02/2023) |
| 07/07/2023 | 27 | STATUS Report *Parties' Joint Status Report and Proposed Pre-Trial Schedule* by Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project (Roche, Brian) (Entered: 07/07/2023) |
| 07/07/2023 | 28 | *Partial* ANSWER to Complaint with Jury Demand by Cook County, Maria Pappas(Honingford, Megan) (Entered: 07/07/2023) |
| 07/07/2023 | 29 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Cook County, Maria Pappas *(partial)* |

| 07/07/2023 | 30 | ATTORNEY Appearance for Defendants Cook County, Maria Pappas by Kathleen Murphy (Murphy, Kathleen) (Entered: 07/07/2023) |
| 07/08/2023 | 31 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report. The stay previously imposed is hereby lifted. The Court sets the following discovery and pretrial schedule. Rule 26(a)(1) disclosures are to be made by 7/26/2023. The deadline for amending under Rule 15(a)(1)(B) is 7/29/2023. Response to motion to dismiss Counts 4 and 5 is to be filed by 8/22/2023; reply to response is to be filed by 9/21/2023. The deadline for amending the pleadings or adding parties on any basis other than Rule 15(a)(1)(B) is 11/30/2023. The deadline for completing fact discovery is 1/12/2024. Rule 26(a)(2) disclosures by the party with the burden of proof on an issue are due by 3/12/2024; responsive disclosures are due by 5/2/2024. The deadline for completing expert discovery is 6/6/2024. The deadline for filing any motion for class certification is 7/11/2024. The telephonic status hearing set for 7/12/2023 is vacated and reset to 9/28/2023 at 9:10 AM, using call-in number 888-684-8852, access code 746-1053. A joint status report regarding the progress of discovery and any settlement discussions is to be filed on 9/21/2023. (mk) (Entered: 07/08/2023) |
| 07/10/2023 | 32 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-20812668. (Guin, David) (Entered: 07/10/2023) |
| 07/11/2023 | 33 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion of David Guin to appear pro hac vice 32 is granted. (mk) (Entered: 07/11/2023) |
| 07/29/2023 | 34 | *First* AMENDED complaint by Palenque Lsna, Michael Bell, Southwest Organizing Project, Michelle Kidd against All Plaintiffs (Schneider, Daniel) (Entered: 07/29/2023) |
| 08/07/2023 | 35 | MOTION by Defendants Cook County, Maria Pappas for extension of time *to respond to First Amended Complaint* (Honingford, Megan) (Entered: 08/07/2023) |
| 08/12/2023 | 36 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendants' motion to dismiss plaintiff's complaint 29 is denied as moot based on plaintiff's filing of an amended complaint. Defendants' motion for extension of time is granted to the following extent: defendants' response to the amended complaint is to be filed by 9/11/2023; plaintiff's response to any motion to dismiss is due 10/23/2023; defendants' reply is due 11/20/2023. The Court declines at this time to extend the discovery and pretrial schedule that it set (as proposed by the parties) on 7/7/2023. The Court notes that it has not and does not intend to stay discovery pending the filing of any motion to dismiss. (mk) (Entered: 08/12/2023) |
| 09/11/2023 | 37 | ANSWER to amended complaint by Maria Pappas(Honingford, Megan) (Entered: 09/11/2023) |
| 09/11/2023 | 38 | ANSWER to amended complaint by Cook County(Honingford, Megan) (Entered: 09/11/2023) |
| 09/11/2023 | 39 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Cook County, Maria Pappas *Partial* (Honingford, Megan) (Entered: 09/11/2023) |

| 09/20/2023 | [40](#) | MINUTE entry before the Honorable Matthew F. Kennelly: At the Court's instance, due to its unavailability on 9/28/2023, the telephonic status hearing set for that date vacated and reset to 9/298/2023 at 9:30 AM, using call-in number 888-684-8852, access code 746-1053. A joint status report regarding the progress of discovery and any settlement discussions remains due on 9/21/2023 as previously ordered. (mk) (Entered: 09/20/2023) |
|---|---|---|
| 09/20/2023 | [41](#) | MINUTE entry before the Honorable Matthew F. Kennelly: This order corrects docket entry [40](#) which contained a typographical error. At the Court's instance, due to its unavailability on 9/28/2023, the telephonic status hearing set for that date vacated and reset to 9/29/2023 at 9:30 AM, using call-in number 888-684-8852, access code 746-1053. A joint status report regarding the progress of discovery and any settlement discussions remains due on 9/21/2023 as previously ordered. Mailed notice. (mma, ) (Entered: 09/20/2023) |
| 09/21/2023 | [42](#) | STATUS Report *(Joint)* by Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project<br><br>(Schneider, Daniel) (Entered: 09/21/2023) |
| 09/22/2023 | [43](#) | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report. The telephonic status hearing set for 9/29/2023 is vacated and reset to 11/22/2023 at 9:10 AM, using call-in number 888-684-8852, access code 746-1053. A joint status report regarding the progress of discovery and any settlement discussions is to be filed on 11/15/2023. (mk) (Entered: 09/22/2023) |
| 10/11/2023 | [44](#) | MOTION by Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project for leave to file excess pages<br><br>(Schneider, Daniel) (Entered: 10/11/2023) |
| 10/12/2023 | [45](#) | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' motion for leave to file excess pages [44](#) is granted, but only in part. Plaintiffs are given leave to file a response brief up to 23 pages long, which represents an expansion of the page limit by a little over 50 percent. (mk) (Entered: 10/12/2023) |
| 10/23/2023 | [46](#) | MEMORANDUM by Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project in Opposition to Motion to Dismiss for Failure to State a Claim [39](#) (Roche, Brian) (Entered: 10/23/2023) |
| 11/09/2023 | [47](#) | ATTORNEY Appearance for Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project by Brigid Carmichael (Carmichael, Brigid) (Entered: 11/09/2023) |
| 11/14/2023 | [48](#) | *SECOND* AMENDED complaint by Palenque Lsna, Michael Bell, Southwest Organizing Project, Michelle Kidd against All Defendants *(With Defendants' Consent)* (Schneider, Daniel) (Entered: 11/14/2023) |
| 11/14/2023 | [49](#) | MOTION by Defendants Cook County, Maria Pappas for extension of time *to respond to Second Amended Complaint (agreed)*<br><br>(Honingford, Megan) (Entered: 11/14/2023) |
| 11/15/2023 | [50](#) | MOTION by Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project to Set Briefing Schedule and Modify Case Management Order<br><br>(Schneider, Daniel) (Entered: 11/15/2023) |

| 11/15/2023 | [51](#) | STATUS Report *(Joint)* by Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project<br><br>(Attachments: # [1](#) Exhibit)(Schneider, Daniel) (Entered: 11/15/2023) |
|---|---|---|
| 11/16/2023 | [52](#) | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report. The motion to partially dismiss the amended complaint is denied as moot [39](#) based on the agreed-upon filing of a second amended complaint. The Court hereby sets a deadline of 12/13/2023 for any and all further amendments to the pleadings and addition of parties, consented or otherwise. The motion to set a briefing schedule and modify the case management order [50](#) will be addressed at the 11/22/2023 telephonic status hearing. The time for that hearing, currently set for 9:10 AM, is advanced to 8:50 AM on 11/22/2023. (mk) (Entered: 11/16/2023) |
| 11/16/2023 | [53](#) | *(CORRECTED) SECOND* AMENDED complaint by Palenque Lsna, Michael Bell, Southwest Organizing Project, Michelle Kidd against All Plaintiffs (Schneider, Daniel) (Entered: 11/16/2023) |
| 11/17/2023 | | SUMMONS Issued as to Defendant Karen A. Yarbrough (gmm, ) (Entered: 11/17/2023) |
| 11/22/2023 | [54](#) | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status and motion hearings held on 11/22/2023. Plaintiffs have until 12/11/2023 to supplement or modify their motion under Rule 16 [50](#) . Defendant's time to respond is extended to 12/21/2023. Case is set for a telephonic status hearing on 12/22/2023 at 9:20 a.m. The following call-in number will be used for the hearing: 888-684-8852, access code 746-1053. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 11/22/2023) |
| 11/30/2023 | [55](#) | SUMMONS Returned Executed by Palenque Lsna, Michael Bell, Southwest Organizing Project, Michelle Kidd as to Karen A. Yarbrough on 11/22/2023, answer due 12/13/2023. (Roche, Brian) (Entered: 11/30/2023) |
| 12/06/2023 | [56](#) | MOTION by Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing ProjectUnder Rules 42(b) and 16 to Bifurcate and Stay Proceedings on Counts II-V Pending Conclusion of Count I<br><br>(Roche, Brian) (Entered: 12/06/2023) |
| 12/07/2023 | [57](#) | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' motion to set briefing schedule and modify case management order [50](#) is withdrawn. Response to plaintiffs' motion to bifurcate and stay [56](#) is to be filed by 12/21/2023. Telephonic hearing remains set for 12/22/2023 at 9:20 a.m., using call-in number 888-684-8852, access code 746-1053. The Court reserves the possibility of changing the hearing to an in-person hearing at the same date and time. (mk) (Entered: 12/07/2023) |
| 12/20/2023 | [58](#) | MOTION by Defendants Cook County, Maria Pappas for leave to file excess pages *in support of their motion to dismiss Second Amended Complaint*<br><br>(Honingford, Megan) (Entered: 12/20/2023) |

| 12/20/2023 | [59](#) | MINUTE entry before the Honorable Matthew F. Kennelly: Defendants' motion for leave to file a 19-page memorandum [58](#) is granted. (mk) (Entered: 12/20/2023) |
|---|---|---|
| 12/21/2023 | [60](#) | ATTORNEY Appearance for Defendant Karen A. Yarbrough by Megan Marie Honingford (Honingford, Megan) (Entered: 12/21/2023) |
| 12/21/2023 | [61](#) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Karen A. Yarbrough<br><br>(Honingford, Megan) (Entered: 12/21/2023) |
| 12/21/2023 | [62](#) | ATTORNEY Appearance for Defendant Karen A. Yarbrough by Prathima Yeddanapudi (Yeddanapudi, Prathima) (Entered: 12/21/2023) |
| 12/21/2023 | [63](#) | RESPONSE by Defendants Cook County, Maria Pappas, Karen A. Yarbrough to motion for miscellaneous relief [56](#) *Plaintiffs' Motion to Bifurcate* (Honingford, Megan) (Entered: 12/21/2023) |
| 12/21/2023 | [64](#) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Cook County, Maria Pappas *Partial*<br><br>(Honingford, Megan) (Entered: 12/21/2023) |
| 12/21/2023 | [65](#) | ANSWER to amended complaint by Maria Pappas(Murphy, Kathleen) (Entered: 12/21/2023) |
| 12/21/2023 | [66](#) | ANSWER to amended complaint by Cook County(Murphy, Kathleen) (Entered: 12/21/2023) |
| 12/21/2023 | [67](#) | ATTORNEY Appearance for Defendant Karen A. Yarbrough by Kathleen Anne Murphy (Murphy, Kathleen) (Entered: 12/21/2023) |
| 12/22/2023 | [68](#) | ATTORNEY Appearance for Defendant Karen A. Yarbrough by Kaitlin Mckenzie (Mckenzie, Kaitlin) (Entered: 12/22/2023) |
| 12/22/2023 | [69](#) | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status and motion hearings held on 12/22/2023. The motion to bifurcate and stay [56](#) is granted in part. Discovery is stayed regarding counts 4 and 5. The Court will revisit whether to stay discovery on counts 2 and 3 after it rules on the pending motions to dismiss. Plaintiffs' response to the motions to dismiss [56](#) [64](#) is due 1/18/2024; replies are due 2/8/2024. Case is set for a telephonic status hearing on 2/20/2024 at 9:00 a.m. The following call-in number will be used for the hearing: 888-684-8852, access code 746-1053. The parties are to confer on the current case schedule. A joint status report regarding a new schedule is due 1/5/2024.Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 12/22/2023) |
| 12/28/2023 | [70](#) | ANNUAL REMINDER: Pursuant to [Local Rule 3.2 (Notification of Affiliates)](#), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the |

affiliates or CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/28/2023: Mailed notice. (tg, ) (Entered: 12/29/2023)

| 01/05/2024 | 71 | STATUS Report *(Joint)* by Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project (Schneider, Daniel) (Entered: 01/05/2024) |
|---|---|---|
| 01/06/2024 | 72 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report and adopts their proposed schedule. The motion to dismiss briefing schedule and 2/20/2024 status hearing previously set remain as-is. A further joint status report regarding discovery progress is to be filed on 2/13/2024. New parties' Rule 26(a)(1) disclosures are to be made by 1/29/2024. Fact discovery is to be completed by 4/30/2024. Rule 26(a)(2) disclosures are to be made by 6/13/2024, and rebuttal Rule 26(a)(2) disclosures are to be made by 7/11/2024. Expert depositions are to be completed by 8/28/2024. The deadline for filing a motion for class certification and any dispositive motions is 9/30/2024. (mk) (Entered: 01/06/2024) |
| 01/16/2024 | 73 | MOTION by Plaintiffs Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Project for leave to file excess pages (Carmichael, Brigid) (Entered: 01/16/2024) |
| 01/17/2024 | 74 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' motion for leave to file a 23-page response memorandum 73 is granted. (mk) (Entered: 01/17/2024) |
| 01/18/2024 | 75 | RESPONSE by Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Projectin Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Cook County, Maria Pappas *Partial* 64 (Schneider, Daniel) (Entered: 01/18/2024) |
| 01/18/2024 | 76 | RESPONSE by Michael Bell, Michelle Kidd, Palenque Lsna, Southwest Organizing Projectin Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Karen A. Yarbrough 61 (Schneider, Daniel) (Entered: 01/18/2024) |
| 01/29/2024 | 77 | MOTION by Plaintiffs Dolly Janis, Goyce H Rates for extension of time *for Rule 26(A)(1) Disclosures of Certain Parties (Joint and Unopposed))* (Roche, Brian) (Entered: 01/29/2024) |
| 01/30/2024 | 78 | MINUTE entry before the Honorable Matthew F. Kennelly: Joint motion for extension of time for certain parties to serve Rule 26(a)(1) disclosures 77 is granted. (mk) (Entered: 01/30/2024) |
| 02/08/2024 | 79 | Rule 26 Discolsure by Goyce H Rates (Wood, Lawrence) (Entered: 02/08/2024) |
| 02/08/2024 | 80 | REPLY by Defendant Karen A. Yarbrough to response in opposition to motion 76 , Motion to Dismiss for Failure to State a Claim 61 (Honingford, Megan) (Entered: |

| 02/08/2024 | 81 | REPLY by Defendants Cook County, Maria Pappas to Motion to Dismiss for Failure to State a Claim 64 , response in opposition to motion 75 (Attachments: # 1 Exhibit Ex. A)(Honingford, Megan) (Entered: 02/08/2024) |
| 02/09/2024 | 82 | MINUTE entry before the Honorable Matthew F. Kennelly: The Clerk is directed to remove the image of docket entry 79 from the docket in this case. The parties are reminded that Federal Rule of Civil Procedure 5(d)(1)(A) prohibits the filing of discovery material and Rule 26 disclosures unless the court orders it. Mailed notice. (mma, ) (Entered: 02/09/2024) |
| 02/13/2024 | 83 | STATUS Report *on Discovery (Joint)* by Michael Bell, Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Roche, Brian) (Entered: 02/13/2024) |
| 02/14/2024 | 84 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report. The telephonic status hearing set for 2/20/2024 is vacated and reset to 4/4/2024 at 9:05 a.m. The following call-in number will be used for the hearing: 888-684-8852, access code 746-1053. A joint status report regarding the progress of discovery and any settlement discussions is to be filed on 3/28/2024. (mk) (Entered: 02/14/2024) |
| 03/28/2024 | 85 | MOTION by Defendants Cook County, Maria Pappas, Karen A. Yarbrough for extension of time to complete discovery *(joint)*<br><br>(Honingford, Megan) (Entered: 03/28/2024) |
| 03/28/2024 | 86 | STATUS Report *(Joint)* by Michael Bell<br><br>(Schneider, Daniel) (Entered: 03/28/2024) |
| 04/01/2024 | 87 | MOTION by Attorney Brigid Carmichael to withdraw as attorney for Michael Bell, Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project. No party information provided<br><br>(Carmichael, Brigid) (Entered: 04/01/2024) |
| 04/02/2024 | 88 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion by Brigid Carmichael to withdraw as attorney for plaintiffs is granted 87 . (mk) (Entered: 04/02/2024) |
| 04/03/2024 | 89 | MINUTE entry before the Honorable Matthew F. Kennelly: At the Court's instance, the telephonic status hearing set for 4/4/2024 is vacated and reset to 4/9/2024 at 8:40 a.m. The following call-in number will be used for the hearing: 888-684-8852, access code 746-1053. (mk) (Entered: 04/03/2024) |
| 04/09/2024 | 90 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 4/9/2024. Defendants' motion to extend discovery 85 is granted. Deadline for substantial ESI and document production is 6/1/2024. Fact discovery cutoff is moved to 7/1/2024. Opening Rule 26(a)(2) disclosures is extended to 8/13/2024. Rebuttal Rule 26(a)(2) disclosures is extended to 9/11/2024. The deadline for completion of expert depositions is extended to 10/28. Deadline for class certification and dispositive motions is extended to 12/2/2024. The parties are directed to file a joint status report with an update on discovery by 5/2/2024. Case is set for a telephonic status hearing on 5/9/2024 at 9:00 a.m. The following call-in number will be used for the hearing: 888-684-8852, access code 746-1053. Persons |

granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 04/09/2024)

| 04/18/2024 | 91 | ATTORNEY Appearance for Defendants Maria Pappas, Karen A. Yarbrough, Cook County by Kenneth Steven Ulrich (Ulrich, Kenneth) (Docket Text Modified by Clerk's Office) Modified on 4/19/2024 (aee, ). (Entered: 04/18/2024) |
| --- | --- | --- |
| 04/18/2024 | 92 | ATTORNEY Appearance for Defendants Maria Pappas, Karen A. Yarbrough, Cook County by David E. Morrison (Morrison, David) (Docket Text Modified by Clerk's Office) Modified on 4/19/2024 (aee, ). (Entered: 04/18/2024) |
| 04/18/2024 | 93 | ATTORNEY Appearance for Defendants Maria Pappas, Karen A. Yarbrough, Cook County by Rachel C. Steiner (Steiner, Rachel) (Docket Text Modified by Clerk's Office) Modified on 4/19/2024 (aee, ). (Entered: 04/18/2024) |
| 04/18/2024 | 94 | ATTORNEY Appearance for Defendants Maria Pappas, Karen A. Yarbrough, Cook County by Kerry Donovan Nelson (Nelson, Kerry) (Docket Text Modified by Clerk's Office) Modified on 4/19/2024 (aee, ). (Entered: 04/18/2024) |
| 04/18/2024 | 95 | ATTORNEY Appearance for Defendants Maria Pappas, Karen A. Yarbrough, Cook County by Benjamin Will Chertok (Chertok, Benjamin)(Docket Text Modified by Clerk's Office) Modified on 4/19/2024 (aee, ). (Entered: 04/18/2024) |
| 04/18/2024 | 96 | ATTORNEY Appearance for Defendants Maria Pappas, Karen A. Yarbrough, Cook County by William Kyle Walther (Walther, William)(Docket Text Modified by Clerk's Office) Modified on 4/19/2024 (aee, ). (Entered: 04/18/2024) |
| 04/19/2024 | 97 | MEMORANDUM OPINION AND ORDER signed by the Honorable Matthew F. Kennelly on 4/19/2024: For the reasons stated in the accompanying Memorandum Opinion and Order, the Court grants Pappas and Cook County's motion to dismiss [dkt. no. 64] Counts 4 and 5, and grants Yarbrough's motion to dismiss all of the claims against her [dkt. no. 61]. (mk) (Entered: 04/19/2024) |
| 05/02/2024 | 98 | STATUS Report *Joint Status Report* by Michael Bell, Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Roche, Brian) (Entered: 05/02/2024) |
| 05/09/2024 | 99 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 5/9/2024. The parties are directed to file a weekly joint status report every Wednesday starting 5/15/2024. The case is set for a telephonic status hearing on 7/2/2024 at 9:15 a.m. The following call-in number will be used for the hearing: 650-479-3207; access code 980-394-33. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 05/09/2024) |
| 05/13/2024 | 100 | MOTION by Plaintiffs Michael Bell, Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project for extension of time to complete discovery *(Joint)* |

| 05/14/2024 | 101 | MINUTE entry before the Honorable Matthew F. Kennelly: Second joint motion to extend discovery deadlines 100 is granted. The deadline for substantial completion of ESI and document is extended to 8/1/2024, and the deadline for completing fact discovery is extended to 9/30/2024. The parties should not expect another extension of these deadlines. The deadline for Rule 26(a)(2) disclosures is extended to 10/14/2024; the deadline for responsive expert reports is extended to 11/12/2024; and the deadline for completing expert discovery is extended to 12/20/2024 (this deadline is less than a 60 day extension, which is deliberate on the Court's part). The deadline for filing dispositive motions and any motion for class certification is extended to 1/24/2025. The requirement to file weekly reports on the progress of ESI, document, and fact discovery remains in place at least until the next status hearing. (mk) (Entered: 05/14/2024) |
| 05/15/2024 | 102 | STATUS Report *Joint* by Michael Bell, Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Roche, Brian) (Entered: 05/15/2024) |
| 05/22/2024 | 103 | STATUS Report *(Joint)* by Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Schneider, Daniel) (Entered: 05/22/2024) |
| 05/29/2024 | 104 | STATUS Report *(Joint)* by Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Schneider, Daniel) (Entered: 05/29/2024) |
| 06/05/2024 | 105 | STATUS Report *(Parties Joint Status Report)* by Cook County, Maria Pappas<br><br>(Ulrich, Kenneth) (Entered: 06/05/2024) |
| 06/12/2024 | 106 | STATUS Report *(Joint)* by Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Schneider, Daniel) (Entered: 06/12/2024) |
| 06/20/2024 | 107 | STATUS Report *(Joint)* by Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Schneider, Daniel) (Entered: 06/20/2024) |
| 06/26/2024 | 108 | STATUS Report *(Joint)* by Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Schneider, Daniel) (Entered: 06/26/2024) |
| 07/02/2024 | 109 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 7/2/2024. The Court's previous order directing the parties to file weekly status reports is vacated. The case is set for a telephonic status hearing on 8/15/2024 at 8:45 a.m. The parties are directed to file a joint status report with an update on discovery by 8/8/2024. The following call-in number will be used: 650-479-3207; access code 980-394-33. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to |

| | | future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 07/02/2024) |
|---|---|---|
| 07/10/2024 | 110 | MOTION by Attorney Kaitlin McKenzie to withdraw as attorney for Cook County, Maria Pappas. No party information provided<br><br>(Mckenzie, Kaitlin) (Entered: 07/10/2024) |
| 07/11/2024 | 111 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion to withdraw appearance of attorney Kaitlin McKenzie is granted 110 . (mk) (Entered: 07/11/2024) |
| 08/08/2024 | 112 | STATUS Report *Parties' (Joint )* by Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Roche, Brian) (Entered: 08/08/2024) |
| 08/08/2024 | 113 | STATUS Report *Parties' (Joint )* by Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Roche, Brian) (Entered: 08/08/2024) |
| 08/15/2024 | 114 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 8/15/2024. Deadline for any motions relating to written discovery is 9/9/2024. The case is set for a telephonic status hearing on 10/18/2024 at 9:00 a.m. The following call-in number will be used for the hearing: 650-479-3207, access code 980-394-33. The parties are directed to file a joint status report by 10/15/2024. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 08/15/2024) |
| 09/09/2024 | 115 | DUPLICATE 116 Modified on 9/9/2024 (tg, ). (Entered: 09/09/2024) |
| 09/09/2024 | 116 | MINUTE entry before the Honorable Matthew F. Kennelly: Order: It has come to the Court's attention that the access code for its telephonic conference line was changed without notice. For any telephonic hearing set in this case the following call-in number will be used: 650-479-3207; access code 2305-915-8729. That is the number that should be used for any telephonic hearing in this case after today's date. Mailed notice (tg, ) (Entered: 09/09/2024) |
| 09/13/2024 | 117 | ATTORNEY Appearance for Defendant Maria Pappas by Michael J. Gilmartin (Gilmartin, Michael) (Entered: 09/13/2024) |
| 09/25/2024 | 118 | MOTION by Plaintiff Dolly Janis to Voluntarily Dismiss All Claims By Her Against All Defendants Without Prejudice *(Unopposed)*<br><br>(Schneider, Daniel) (Entered: 09/25/2024) |
| 09/26/2024 | 119 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiff Dolly Janis's unopposed motion to voluntarily dismiss her claims without prejudice 118 is granted. (mk) (Entered: 09/26/2024) |
| 10/15/2024 | 120 | STATUS Report *(Joint)* by Goyce H Rates, Michelle Kidd, Southwest Organizing Project, Palenque Lsna<br><br>(Schneider, Daniel) (Entered: 10/15/2024) |

| 10/16/2024 | 121 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report. The telephonic status hearing set for 10/18/2024 is vacated and reset to 12/20/2024 at 8:50 a.m. The following call-in number will be used for the hearing: 650-479-3207, access code 2305-015-8729. The parties are directed to file a joint status report by on 12/13/2024. (mk) (Entered: 10/16/2024) |
|---|---|---|
| 12/13/2024 | 122 | STATUS Report *(Joint)* by Goyce H Rates, Michelle Kidd, Southwest Organizing Project, Palenque Lsna<br><br>(Schneider, Daniel) (Entered: 12/13/2024) |
| 12/14/2024 | 123 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report. The telephonic status hearing set for 12/20/2024 is vacated and reset to 1/27/2025 at 9:15 a.m. The following call-in number will be used for the hearing: 650-479-3207, access code 2305-015-8729. (mk) (Entered: 12/14/2024) |
| 12/27/2024 | 124 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/27/2024: Mailed notice. (tg, ) (Entered: 12/28/2024) |
| 01/17/2025 | 125 | MOTION by Plaintiffs Goyce H Rates, Michelle Kidd for leave to file excess pages *in Support of Class Certification and Summary Judgment*<br><br>(Schneider, Daniel) (Entered: 01/17/2025) |
| 01/21/2025 | 126 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' motion for leave to file a 30-page class certification memorandum and a 25-page partial summary judgment memorandum 125 is granted. Defendants' responses may equal these page limits. Plaintiffs' replies are limited to 15 pages. (mk) (Entered: 01/21/2025) |
| 01/22/2025 | 127 | MOTION by Defendants Maria Pappas, Cook County for leave to file excess pages *in Support of Memorandum of Law in Support of Their Motion for Summary Judgement (Uncontested)*<br><br>(Ulrich, Kenneth) (Entered: 01/22/2025) |
| 01/23/2025 | 128 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has come to realize from the two most recently filed motions that the parties are intending to file simultaneous summary judgment motions, which the Court does not typically accept. The telephonic status hearing set for 1/27/2025 is vacated and advanced to 8:55 AM tomorrow, 1/24/2025, to discuss this and, likely, to set a back-and-forth summary judgment schedule. The Court also needs to discuss the simultaneous pendency of class certification and summary judgment motions and the potential |

application of this. The following call-in number will be used: 650-479-3207, access code 2305-915-8729. (mk) (Entered: 01/23/2025)

| 01/24/2025 | 129 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 1/24/2025. The defendant's motion to file a 25-page summary judgment motion 127 is granted. The defendant's motion for summary judgment is to be filed by 1/24/2025. The plaintiff's motion for the class certification is also be filed by 1/24/2025. A joint status report with a proposed schedule and page limitations regarding summary judgment motions is due 1/28/2025. Mailed notice. (mma, ) (Entered: 01/24/2025) |
| --- | --- | --- |
| 01/24/2025 | 130 | MOTION by Plaintiffs Goyce H Rates, Michelle Kidd to certify class and *Memorandum in Support* (Roche, Brian) (Entered: 01/24/2025) |
| 01/24/2025 | 131 | APPENDIX motion to certify class 130 *(In Support)* (Attachments: # 1 Exhibit A) (Roche, Brian) (Entered: 01/24/2025) |
| 01/24/2025 | 132 | MOTION by Defendants Maria Pappas, Cook County for summary judgment (Ulrich, Kenneth) (Entered: 01/24/2025) |
| 01/24/2025 | 133 | MEMORANDUM by Maria Pappas, Cook County in support of motion for summary judgment 132 (Ulrich, Kenneth) (Entered: 01/24/2025) |
| 01/24/2025 | 134 | RULE 56.1(a)(2) Statement by Maria Pappas, Cook County regarding motion for summary judgment 132 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Ulrich, Kenneth) (Entered: 01/24/2025) |
| 01/28/2025 | 135 | STATUS Report *(Parties Joint Status Report)* by Maria Pappas, Cook County (Morrison, David) (Entered: 01/28/2025) |
| 01/29/2025 | 136 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report and approves the page/paragraph limits proposed as well as the briefing schedule. On the latter, plaintiffs' response and cross-motion for summary judgment are due 3/3/2025; defendants' reply/response is due 4/14/2025; and plaintiffs' reply on the cross-motion is due 5/14/2025. Defendants' response to the motion for class certification is due 3/3/2025, and plaintiffs' reply is due 4/14/2025. Given the age of the case, the parties should not expect extensions of these dates. The case is set for a telephonic status hearing on 5/20/2025 at 8:50 AM, using call-in number 650-479-3207, access code 2305-915-8729. (mk) (Entered: 01/29/2025) |
| 03/03/2025 | 137 | MOTION by Defendants Cook County, Maria Pappas To Exclude The Expert Reports and Testimony of William G. Hamm (Ulrich, Kenneth) (Entered: 03/03/2025) |
| 03/03/2025 | 138 | MEMORANDUM by Cook County, Maria Pappas in support of motion for miscellaneous relief 137 *(Combined Memorandum of Law in Support of Their Motion to Exclude The Reports and Testimony of William G. Hamm and in Opposition to Plaintiffs' Motion for Class Certification (DKT#130))* (Attachments: # 1 Exhibit A-H)(Ulrich, Kenneth) (Entered: 03/03/2025) |
| 03/03/2025 | 139 | MOTION by Plaintiffs Southwest Organizing Project, Michelle Kidd, Palenque Lsna, Goyce H Rates for partial summary judgment |

| 03/03/2025 | 140 | MEMORANDUM by Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project in support of motion for partial summary judgment 139 (Roche, Brian) (Entered: 03/03/2025) |
|---|---|---|
| 03/03/2025 | 141 | RESPONSE by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project to Rule 56 statement, 134 (Roche, Brian) (Entered: 03/03/2025) |
| 03/03/2025 | 142 | RULE 56.1 Statement by Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project regarding motion for partial summary judgment 139 *(In Support) and in Opposition to Defendants Motion for Summary Judgment* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15)(Roche, Brian) (Entered: 03/03/2025) |
| 03/03/2025 | 143 | EXHIBIT by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project regarding Rule 56 statement,, 142 (Attachments: # 1 Exhibit 17, # 2 Exhibit 18, # 3 Exhibit 19, # 4 Exhibit 20, # 5 Exhibit 21, # 6 Exhibit 22, # 7 Exhibit 23, # 8 Exhibit 24, # 9 Exhibit 25, # 10 Exhibit 26, # 11 Exhibit 27, # 12 Exhibit 28, # 13 Exhibit 29, # 14 Exhibit 30, # 15 Exhibit 31)(Roche, Brian) (Entered: 03/03/2025) |
| 03/03/2025 | 144 | EXHIBIT by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project regarding Rule 56 statement,, 142 (Attachments: # 1 Exhibit 33, # 2 Exhibit 34, # 3 Exhibit 35, # 4 Exhibit 36, # 5 Exhibit 37, # 6 Exhibit 38, # 7 Exhibit 39, # 8 Exhibit 40, # 9 Exhibit 41, # 10 Exhibit 42)(Roche, Brian) (Entered: 03/03/2025) |
| 03/03/2025 | 145 | EXHIBIT by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project regarding Rule 56 statement,, 142 (Attachments: # 1 Exhibit 44, # 2 Exhibit 45, # 3 Exhibit 46, # 4 Exhibit 47, # 5 Exhibit 48)(Roche, Brian) (Entered: 03/03/2025) |
| 03/03/2025 | 146 | EXHIBIT by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project regarding Rule 56 statement,, 142 (Attachments: # 1 Exhibit 50, # 2 Exhibit 51, # 3 Exhibit 52, # 4 Exhibit 53, # 5 Exhibit 54, # 6 Exhibit 55, # 7 Exhibit 56, # 8 Exhibit 57, # 9 Exhibit 58)(Roche, Brian) (Entered: 03/03/2025) |
| 03/03/2025 | 147 | EXHIBIT by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project regarding Rule 56 statement,, 142 (Attachments: # 1 Exhibit 60, # 2 Exhibit 61, # 3 Exhibit 62, # 4 Exhibit 63, # 5 Exhibit 64, # 6 Exhibit 65, # 7 Exhibit 66, # 8 Exhibit 67)(Roche, Brian) (Entered: 03/03/2025) |
| 03/03/2025 | 148 | EXHIBIT by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project regarding Rule 56 statement,, 142 (Attachments: # 1 Exhibit 69, # 2 Exhibit 70, # 3 Exhibit 71, # 4 Exhibit 72, # 5 Exhibit 73, # 6 Exhibit 74, # 7 Exhibit 75, # 8 Exhibit 76, # 9 Exhibit 77, # 10 Exhibit 78)(Roche, Brian) (Entered: 03/03/2025) |
| 03/03/2025 | 149 | EXHIBIT by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project regarding Rule 56 statement,, 142 (Attachments: # 1 Exhibit 80, # 2 Exhibit 81, # 3 Exhibit 82, # 4 Exhibit 83, # 5 Exhibit 84, # 6 Exhibit 85, # 7 Exhibit 86, # 8 Exhibit 87, # 9 Exhibit 88, # 10 Exhibit 89, # 11 Exhibit 90, # 12 Exhibit 91, # 13 Exhibit 92, # 14 Exhibit 93)(Roche, Brian) (Entered: 03/03/2025) |

| | | |
|---|---|---|
| 03/03/2025 | 150 | APPENDIX Rule 56 statement,, 142 *of Exhibits in Support of Motion for Partial Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment* (Roche, Brian) (Entered: 03/03/2025) |
| 03/05/2025 | 151 | MINUTE entry before the Honorable Matthew F. Kennelly: The parties are directed to provide to Judge Kennelly's chambers (Room 2188) a USB drive with their summary judgment/Daubert/class certification submissions with each exhibit bookmarked in the PDF version. This should also be done with the not-yet-filed submissions once they are due. (mk) (Entered: 03/05/2025) |
| 04/11/2025 | 152 | EXHIBIT by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project *(Corrected Dkt. 144-5, SOF Exhibit 37)* regarding exhibit, 144 (Schneider, Daniel) (Entered: 04/11/2025) |
| 04/14/2025 | 153 | REPLY by Plaintiffs Michelle Kidd, Goyce H Rates to motion to certify class 130 *(In Support) and in Opposition to Defendants' Motion to Exclude the Expert Reports and Testimony of William G. Hamm* (Attachments: # 1 Exhibit U, # 2 Exhibit V, # 3 Exhibit W, # 4 Exhibit X, # 5 Exhibit Y, # 6 Exhibit Z, # 7 Exhibit AA)(Roche, Brian) (Entered: 04/14/2025) |
| 04/14/2025 | 154 | MOTION by Plaintiffs Michelle Kidd, Goyce H Rates to Exclude the Opinion and Testimony of Defendants' Expert Ron Devries<br><br>(Roche, Brian) (Entered: 04/14/2025) |
| 04/14/2025 | 155 | MEMORANDUM by Michelle Kidd, Goyce H Rates in support of motion for miscellaneous relief 154 *(to Exclude the Opinion and Testimony of Defendants' Expert Ron Devries )* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Roche, Brian) (Entered: 04/14/2025) |
| 04/14/2025 | 156 | RESPONSE by Defendants Cook County, Maria Pappas to Rule 56 statement,, 142 *(Defendants' Response to Plaintiffs' Statement of Material Facts in Support of Their Motion for Partial Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment)* (Attachments: # 1 Exhibit A-L)(Ulrich, Kenneth) (Entered: 04/14/2025) |
| 04/14/2025 | 157 | REPLY by Defendants Cook County, Maria Pappas to motion for partial summary judgment 139 , memorandum in support of motion 140 , memorandum in support of motion 133 , motion for summary judgment 132 *(Defendants' Combined Reply in Support of Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Partial Summary Judgment)* (Ulrich, Kenneth) (Entered: 04/14/2025) |
| 04/15/2025 | 158 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court approved, on 1/28/2025, significantly-expanded page limits for the parties' briefs on various motions. See dkt. 135. So far (through 4/14/2025) the briefs have conformed to the due dates and page limits that the Court approved. However, yesterday (4/14/2025) plaintiffs also filed a motion not covered by the 1/28/2025 order, specifically a motion to exclude testimony by (it appears) a damages expert for the defendants. See dkt. 154. That motion was supported by a 13-page brief. See dkt. 155. If the relief sought in the plaintiffs' motion to exclude does not impact the pending summary judgment and class certification motions--the page limits on which were carefully discussed and approved--then the Court will table the motion and deal with it, as needed, after it rules on the pending class certification and summary judgment motions. If, however, the relief sought in the plaintiffs' motion to exclude *does* impact the pending summary judgment and class certification motions--for example, if it seeks to exclude evidence relied upon by defendants in connection with those motions--then it should have been included in the briefing approved by the Court, |

Within the page limits the Court approved. To put it another way, a party is not entitled to take for itself what amounts to an extra dozen or so pages beyond what the Court approved in relation to the briefing the Court addressed in the 1/28/2025 order. Plaintiffs are directed to file a status report by 4/16/2025 that addresses the points covered in this minute entry. (mk) (Entered: 04/15/2025)

| 04/16/2025 | 159 | STATUS Report *in Response to April 15, 2025 Minute Order* by Michelle Kidd, Goyce H Rates<br><br>(Schneider, Daniel) (Entered: 04/16/2025) |
|---|---|---|
| 04/17/2025 | 160 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed plaintiffs' status report. The Court understands the situation, but it would not have approved a larger page-limit extension (which is already quite large) even if it had known at the time that a challenge to defendants' not-yet-cited expert would be forthcoming. Plaintiffs' motion to exclude 154 is stricken without prejudice. If plaintiffs want to assert it, they will have to do so within the existing page limits. Plaintiffs are given until 4/23/2025 to file a revised class certification reply memorandum that includes, if they wish, their challenge to defendants' expert, within the existing page limits. The Court will determine after that whether, and the extent to which, to allow further briefing on that particular issue. A joint status report in that regard is to be filed on 4/25/2025. (mk) (Entered: 04/17/2025) |
| 04/23/2025 | 161 | REPLY by Plaintiffs Michelle Kidd, Goyce H Rates to motion to certify class 130 *(Combined) Memorandum in Support of Motion for Class Certificate, In Opposition to Defendants' Motion to Exclude the Expert Reports and Testimony of William G. Hamm, and in Support of Plaintiffs' Motion to Exclude the Expert Reports and Testimony of Ron Devries* (Attachments: # 1 Exhibit U, # 2 Exhibit V, # 3 Exhibit W, # 4 Exhibit X, # 5 Exhibit Y, # 6 Exhibit Z, # 7 Exhibit AA, # 8 Exhibit BB, # 9 Exhibit CC)(Roche, Brian) (Entered: 04/23/2025) |
| 04/23/2025 | 162 | MOTION by Plaintiffs Michelle Kidd, Goyce H Rates (Revised) to Exclude the Opinion and Testimony of Defendants' Expert Ron Devries<br><br>(Roche, Brian) (Entered: 04/23/2025) |
| 04/24/2025 | 163 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendants are given leave to file by 4/30/2025 a response of not more than 5 pages to plaintiff's motion to exclude the reports and testimony of Ron DeVries, and plaintiffs are given leave to file by 5/7/2025 a reply of not more than 5 pages. (mk) (Entered: 04/24/2025) |
| 04/25/2025 | 164 | STATUS Report *(Joint)* by Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Schneider, Daniel) (Entered: 04/25/2025) |
| 04/30/2025 | 165 | RESPONSE by Cook County, Maria Pappasin Opposition to MOTION by Plaintiffs Michelle Kidd, Goyce H Rates (Revised) to Exclude the Opinion and Testimony of Defendants' Expert Ron Devries<br><br>162 *(Defendants' Response in Opposition to Plaintiffs' Motion to Exclude the Expert Reports and Testimony of Ron Devries)* (Morrison, David) (Entered: 04/30/2025) |
| 05/07/2025 | 166 | REPLY by Plaintiffs Michelle Kidd, Goyce H Rates to response in opposition to motion, 165 *and in support of Plaintiffs' Motion to Exclude the Opinion and Testimony of Defendants' Expert Ron Devries* (Schneider, Daniel) (Entered: 05/07/2025) |

| 05/07/2025 | 167 | SEALED EXHIBIT by Defendants Cook County, Maria Pappas, Karen A. Yarbrough (One Black and Silver Flash Drive) (tg, ) (Entered: 05/08/2025) |
|---|---|---|
| 05/14/2025 | 168 | REPLY by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project to motion for partial summary judgment 139 *In Support* (Roche, Brian) (Entered: 05/14/2025) |
| 05/14/2025 | 169 | RESPONSE by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project to Response, 156 *(to Defendants' Local Rule 56.1 Statement of Additional Facts)* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Roche, Brian) (Entered: 05/14/2025) |
| 05/20/2025 | 170 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 5/20/2025. The case is set for an in-person oral argument hearing on 6/25/2025 at 10:00 a.m. The hearing will be held in Courtroom 2103. The case is set for a telephonic status hearing on 6/20/2025 at 9:10 a.m. The following call-in number will be used for the hearing: 650-479-3207; access code 2305-915-8729. The following call-in number will be used for the hearing: 650-479-3207; access code 2305-915-8729. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 05/20/2025) |
| 05/21/2025 | 171 | MOTION by Plaintiffs Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project to Reschedule June 25, 2025 Oral Argument *(Unopposed )*<br><br>(Roche, Brian) (Entered: 05/21/2025) |
| 05/22/2025 | 172 | MINUTE entry before the Honorable Matthew F. Kennelly: The motion to continue the oral argument for about 4 weeks, to 7/23/2025 specifically, is denied. That date is not available for the Court, and in any event it is too late in the term given the Court's law clerk transition dates. (mk) (Entered: 05/22/2025) |
| 06/17/2025 | 173 | MOTION by Plaintiffs Michael Bell, Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project for leave to file *Supplemental Authorities in Support of Motion for Partial Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment*<br><br>(Watkins, Charles) (Entered: 06/17/2025) |
| 06/18/2025 | 174 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' motion to cite supplemental authority 173 is granted. In addition, the telephonic status hearing set for 9:10 AM on 6/20/2025 is advanced to 9:00 AM on that same date. The following call-in number will be used for the hearing: 650-479-3207; access code 2305-915-8729. (mk) (Entered: 06/18/2025) |
| 06/18/2025 | 175 | MOTION by Defendants Cook County, Maria Pappas for Leave to File Supplemental Authority<br><br>(Ulrich, Kenneth) (Entered: 06/18/2025) |
| 06/19/2025 | 176 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendants' motion for leave to cite supplemental authority 175 is granted. (mk) (Entered: 06/19/2025) |
| 06/20/2025 | 177 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 6/20/2025. The Court went over the logistics regarding the |

| | | 6/23/2025 in-person hearing. The case remains set for an in-person motion hearing on 6/25/2025 at 10:00 a.m. 170 . Mailed notice. (mma, ) (Entered: 06/20/2025) |
|---|---|---|
| 06/24/2025 | 178 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court notes that it reserves the right to ask questions at tomorrow's hearing about any matter addressed in the parties' briefs, and not just the Illinois statutory question that the Court referenced during the telephonic status hearing last week. (mk) (Entered: 06/24/2025) |
| 06/25/2025 | 179 | MINUTE entry before the Honorable Matthew F. Kennelly: In person motion hearing held on 6/25/2025. Oral argument heard on the motions for class certification and summary judgment. The class certification 130 and summary judgment motions 132 139 are taken under advisement. Mailed notice. (mma, ) (Entered: 06/25/2025) |
| 07/07/2025 | 180 | MEMORANDUM OPINION AND ORDER signed by the Honorable Matthew F. Kennelly on 7/7/2025: For the reasons stated in the accompanying Memorandum Opinion and Order, the Court grants the plaintiffs' motion for class certification, denies the defendants' motion to exclude Dr. William G. Hamm, and denies the plaintiffs' motion to exclude Ron DeVries. The class is defined as all persons or entities who meet the following criteria: (1) they owned or were the beneficial owners of residential real property in Cook County, Illinois in Residential Assessment Classes Major Class 2 and Class 3; (2) the properties were sold in the Cook County annual tax sale; (3) a tax deed was issued to the purchaser of such property at any time on or after December 15, 2020 and not withdrawn; and (4) the Cook County Assessor's Office's assessed Fair Cash Value as of the time of tax deed's issuance exceeded the total amount of taxes, fees, and interest owed at the end of the redemption period. Michelle Kidd and Goyce H. Rates are appointed as representatives for the class, and John Bouman, Brian D. Roche, Charles R. Watkins, and David J. Guin are appointed as class counsel. (mk) (Entered: 07/07/2025) |
| 07/07/2025 | 181 | MINUTE entry before the Honorable Matthew F. Kennelly: The case is set for a telephonic status hearing on 7/28/2025 at 9:15 AM, using call-in number 650-479-3207, access code 2305-915-8729. (mk) (Entered: 07/07/2025) |
| 07/11/2025 | 182 | MOTION by Plaintiffs Michelle Kidd, Goyce H Rates for Clarification of Class Certification Order

(Schneider, Daniel) (Entered: 07/11/2025) |
| 07/12/2025 | 183 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion for clarification 182 is granted. The 7/7/2025 class certification order (dkt. 180) is modified to include Lawrence Wood and Daniel Schneider of Legal Action Chicago as class counsel in this matter. (mk) (Entered: 07/12/2025) |
| 07/23/2025 | 184 | MINUTE entry before the Honorable Matthew F. Kennelly: At the Court's instance, to avoid a conflict with an ongoing jury trial, the telephonic status hearing set for 7/28/2025 is vacated and reset to 8/4/2025 at 8:55 AM, using call-in number 650-479-3207, access code 2305-915-8729. (mk) (Entered: 07/23/2025) |
| 08/04/2025 | 185 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 8/4/2025. The deadline for submitting class notice is 8/12/2025. The parties are to send Word versions of the class notice to Judge Kennelly's proposed order email address. The deadline for sending class notice is 8/25/2025. The case is set for a telephonic status hearing on 8/15/2025 at 9:00 a.m. The following call-in number will be used for the hearing: 650-479-3207; access code 2305-915-8729. |

Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 08/04/2025)

| | | |
|---|---|---|
| 08/11/2025 | 186 | MINUTE entry before the Honorable Matthew F. Kennelly: In a footnote in their summary judgment brief in this case, the plaintiffs assert they are bringing a "Takings claim directly under the Constitution" "[a]s an alternative to their § 1983 claim." Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 9 n.2. This point has not been briefed. The Court requests further briefing on this issue in particular. Specifically, the Court requests briefing on (1) the support (if any) for bringing a Fifth Amendment Takings Claim directly under the Constitution and (2) how, if at all, the requirements for making and sustaining that claim would differ from those for a Fifth Amendment Takings Claim under Section 1983. Plaintiffs are given until 8/22/2025 to file a brief of not more than 10 pages on these points, or a statement that they do not intend to pursue such a claim. If plaintiffs file a brief, then defendants are given until 9/2/2025 to file a response brief of not more than 10 pages. (mk) (Entered: 08/11/2025) |
| 08/12/2025 | 187 | MOTION by Plaintiffs Michelle Kidd, Goyce H Rates for Order Approving Notice to the Class<br><br>(Attachments: # 1 Exhibit 1 - Proposed Order, # 2 Exhibit 2 - Mail Notice, # 3 Exhibit 3 - Summary/Publication Notice, # 4 Exhibit 4 - Long Form Notice) (Schneider, Daniel) (Entered: 08/12/2025) |
| 08/15/2025 | 188 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 8/15/2025. The plaintiffs' motion for entry of the proposed order providing notice to the class 187 is granted. Order Providing Notice to the Class Under Rule 23(c)(2)(B) to follow. The plaintiffs are directed to file a status report regarding the result of the notice by 11/7/2025. The case is set for a telephonic status hearing on 11/14/2025 at 9:00 a.m. The following call-in number will be used for the hearing: 650-479-3207; access code 2305-915-8729. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 08/15/2025) |
| 08/15/2025 | 189 | ORDER PROVIDING NOTICE TO THE CLASS UNDER RULE 23(c)(2)(B): Signed by the Honorable Matthew F. Kennelly on 8/15/2025. Mailed notice. (mma, ) (Entered: 08/15/2025) |
| 08/22/2025 | 190 | MEMORANDUM by Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project *in Support of Fifth Amendment Takings Claim Brought Directly Under the Constitution* (Attachments: # 1 Exhibit 2025-05-31 Fulton v Fulton County 11th Cir, # 2 Exhibit 2025-06-10 140 State Ds memo in support of MTD 3rd party cpl)(Roche, Brian) (Entered: 08/22/2025) |
| 09/02/2025 | 191 | RESPONSE by Defendants Cook County, Maria Pappas to memorandum, 190 *(Defendants' Response to Plaintiffs' Memorandum in Support of Fifth Amendment Takings Claims Directly Under the Constitution)* (Attachments: # 1 Exhibit 1-2) (Ulrich, Kenneth) (Entered: 09/02/2025) |

| 10/02/2025 | 192 | MOTION by Plaintiffs Michael Bell, Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project for leave to file *Supplemental Authority in Support of Motion for Partial Summary Judgment and in Opposition to Defendants' Motions for Partial Summary Judgment*<br><br>(Attachments: # 1 Exhibit Supplemental Authority)(Watkins, Charles) (Entered: 10/02/2025) |
|---|---|---|
| 10/03/2025 | 193 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' motion for leave to file supplemental authority 192 is granted. (mk) (Entered: 10/03/2025) |
| 10/21/2025 | 194 | MOTION by Plaintiffs Michael Bell, Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project to supplement *authority in support of Motions for Partial Summary Judgment*<br><br>(Watkins, Charles) (Entered: 10/21/2025) |
| 11/07/2025 | 195 | STATUS Report *on Class Notice* by Michelle Kidd, Goyce H Rates<br><br>(Attachments: # 1 Exhibit Exhibit 1 (Declaration and Exhibits Thereto))(Schneider, Daniel) (Entered: 11/07/2025) |
| 11/14/2025 | 196 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 11/14/2025 and continued to 12/2/2025 at 9:15 a.m. The following call-in number will be used for the hearing: 650-479-3207; access code 2305-915-8729. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 11/14/2025) |
| 12/01/2025 | 197 | MINUTE entry before the Honorable Matthew F. Kennelly: At the Court's instance, the telephonic status hearing set for 12/2/2025 is vacated and reset to 12/11/2025 at 8:55 AM. The following call-in number will be used for the hearing: 650-479-3207; access code 2305-915-8729. (mk) (Entered: 12/01/2025) |
| 12/08/2025 | 198 | MEMORANDUM OPINION AND ORDER signed by the Honorable Matthew F. Kennelly on 12/8/2025: For the reasons stated in the accompanying Memorandum Opinion and Order, the Court denies the defendants' motion for summary judgment and partly grants and partly denies the plaintiffs' motion for summary judgment. The sovereign immunity defense is overruled; plaintiffs are entitled to summary judgment on their contentions that the defendants' tax sale procedures violate the Fifth and Eighth Amendments; but the issues of Monell liability and appropriate relief remain for later determination. The telephonic status hearing set for December 11, 2025 is vacated. The case is set for an in-person status hearing on December 16, 2025 at 10:00 a.m. The parties are directed to promptly meet and confer and are to file by December 12, 2025 a joint status report with a proposal for whatever further proceedings are needed to bring the case to a conclusion (or separate proposals if they cannot agree). They should come to the December 16 status hearing prepared to set a prompt trial date on any points that remain for trial. (mk) (Entered: 12/08/2025) |
| 12/12/2025 | 199 | STATUS Report - *JOINT STATUS REPORT* by Michael Bell, Dolly Janis, Michelle Kidd, Palenque Lsna, Goyce H Rates, Southwest Organizing Project<br><br>(Roche, Brian) (Entered: 12/12/2025) |

| 12/16/2025 | 200 | MINUTE entry before the Honorable Matthew F. Kennelly: In person status hearing held on 12/16/2025. Defendants' counsel stated they plan on filing a notice of appeal. The case is set for an in-person status hearing on 1/9/2026 at 9:30 a.m. The hearing will be held in Courtroom 2103. Mailed notice. (mma, ) (Entered: 12/16/2025) |
| --- | --- | --- |
| 12/31/2025 | 201 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/31/2025: Mailed notice. (tg, ) (Entered: 01/05/2026) |
| 01/06/2026 | 202 | NOTICE of appeal by Maria Pappas regarding orders 198 Filing fee $ 605, receipt number AILNDC-24555871. Receipt number: n (Ulrich, Kenneth) (Entered: 01/06/2026) |
| 01/07/2026 | 203 | MOTION by Defendant Cook County to stay -- *Defendant's Motion to Certify Question and Stay Proceedings*<br><br>(Morrison, David) (Entered: 01/07/2026) |
| 01/07/2026 | 204 | MEMORANDUM by Cook County in support of motion to stay 203 -- *Memorandum of Law in Support of Defendant's Motion to Certify Question and Stay Proceedings* (Morrison, David) (Entered: 01/07/2026) |
| 01/08/2026 | 205 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 202 . (ph, ) (Entered: 01/08/2026) |